THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEODIS DORTCH, Defendant-Appellant.

First District (4th Division)   No. 81—714

Opinion filed September 30, 1982.—Rehearing denied November 10, 1982.

762

Irwin L. Frazin & Associates, Ltd., of Chicago (Robert A. Fisher and David Schreiner, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Rhoda Davis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JIGANTI delivered the opinion of the court:

After a jury trial, the defendant was found guilty of murder and attempt armed robbery and sentenced to a term of 28 years. The defendant on appeal contends that his arrest was illegal. Conse-

quently, the defendant claims that the subsequent lineup, the in-court testimony concerning the lineup identification and the in-court identification should have been suppressed. Dortch also contends that he was denied a fair trial because he was not allowed to effectively confront the witnesses against him, because the prosecutor made prejudicial remarks and because the court improperly read the *Prim* instruction to the jury.

On September 19, 1979, two men walked into a fast food restaurant, a Church's Chicken, and announced a robbery. One of the men shot and killed an employee and then unsuccessfully tried to open the cash register. When this failed both men exited the restaurant. There was one eyewitness that saw the shooting, Ethel Collins. It is her testimony that is the subject of the first issue on appeal. Collins viewed the defendant in a police lineup and identified the defendant. At trial, Collins made an in-court identification and also testified about the out-of-court lineup identification.

Prior to trial the court heard a motion to quash the defendant's arrest and to suppress the subsequent lineup and in-court identifications and testimony by Collins. Dortch contended that his arrest was in violation of *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, and *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543, because he was arrested in his home and without a warrant. The trial court was well apprised of the two cases cited and made a very careful and specific ruling. The court found that although there was probable cause to make an arrest, a fact which is not disputed, there were no exigent circumstances and no consent was given to enter the house. Consequently, the arrest was improper. The court further found that the arrest was not made for the purpose of having a lineup, obtaining evidence or for otherwise exploiting an illegal arrest. The court ruled that the evidence was admissible.

The State argues that there were exigent circumstances which would make the arrest proper under *Payton* and *Abney*. The State also argues that there was consent given to enter the house which made the arrest proper. We will not consider these items because we agree with the State's third contention; the taint from the primary illegality, the illegal arrest, was dissipated or attenuated.[1]

---

[1]Cases holding that a lineup identification is not in fact fruit of the prior illegal arrest include the following: *Commonwealth v. Garvin* (1972), 448 Pa. 258, 293 A.2d 33; *United States v. Young* (4th Cir. 1975), 512 F.2d 321; *State v. Lynch* (Mo. App. 1975), 528 S.W.2d 454. Illinois, however, has held that a lineup identification is fruit of a prior illegal search in *People v. Holdman* (1977), 51 Ill. App. 3d 484, 366 N.E.2d 993, and *People v. Sampson* (1980), 86 Ill. App. 3d 687, 408 N.E.2d 3.

Not all evidence obtained from illegal searches or seizures in violation of the fourth amendment is suppressible. (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407; *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.) Direct, primary evidence obtained from an illegal search or seizure is suppressible under the fourth amendment exclusionary rule. (*Wong Sun v. United States* (1963), 371 U.S. 471, 485, 9 L. Ed. 2d 441, 453-54, 83 S. Ct. 407, 416.) In *Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, the fourth amendment violation was an illegal warrantless search of the defendant's residence. Obscene materials were found as a direct and immediate result of the search. The defendant was entitled to have the evidence suppressed. However, evidence may often be secondary or derivative in character. After an illegal search or seizure the defendant may subsequently give a confession or information that leads to other evidence. (See W. LaFave, Search and Seizure sec. 11.4, at 612 (1978).) In the instant case, the lineup, which followed the illegal arrest, was secondary or derivative evidence.

Secondary or derivative evidence is not "sacred and inaccessible." If such evidence is obtained from an independent source it may be used. (*Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 392, 64 L. Ed. 319, 321, 40 S. Ct. 182, 183.) Secondary evidence is tainted but the connection between the illegal search or seizure and the evidence may "become so attenuated as to dissipate the taint." (*Nardone v. United States* (1939), 308 U.S. 338, 341, 84 L. Ed. 307, 312, 60 S. Ct. 266, 268.) The guiding question with secondary evidence is " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (*Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.) The exclusionary rule is not a personal constitutional right but rather a judicially carved remedy designed to safeguard fourth amendment rights. (*United States v. Calandra* (1974), 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613.) As the Supreme Court explained in *Elkins v. United States* (1960), 364 U.S. 206, 217, 4 L. Ed. 2d 1669, 1677, 80 S. Ct. 1437, 1444, "The rule is calculated to prevent, not to repair. Its purpose is to deter *** by removing the incentive to disregard it." In *Brown v. Illinois* (1975), 422 U.S. 590, 608-09, 45 L. Ed. 2d 416, 430, 95 S. Ct. 2254, 2264, Mr. Justice Powell concurring in part stated that "in some circumstances strict adherence to the Fourth Amendment exclusionary rule imposes greater cost on the le-

gitimate demands of law enforcement than can be justified by the rule's deterrent purposes. The notion of the 'dissipation of the taint' attempts to mark the point at which the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost."

In support of his position that the taint has not been dissipated or attenuated, Dortch cites *People v. Sampson* (1980), 86 Ill. App. 3d 687, 408 N.E.2d 3, where the court listed four factors to be considered in making that determination: the temporal proximity of the illegality to the evidence obtained; the presence of intervening circumstances; the purpose and flagrancy of the police misconduct; and the presence of or absence of *Miranda* warnings. The factors set out in *Sampson* were derived from *Brown v. Illinois* (1975), 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62. In setting forth the test in *Brown*, the Supreme Court stated that the protection of the fourth amendment will not turn on a talismanic test. However, the court put special weight on the *Miranda* warnings because *Brown* involved a confession which is not relevant here. The court also gave particular emphasis to the purpose and flagrancy of the official misconduct which is relevant to a lineup situation.

The first consideration set out in *Sampson* is temporal proximity. In the instant case, Dortch was arrested in his home six weeks subsequent to the occurrence. The lineup took place within four hours of his arrest. The Supreme Court in *Wong Sun* considered the element of temporal proximity. There the defendant, Wong Sun, had been released on his own recognizance after a lawful arraignment. Several days later he voluntarily returned and made a statement. The court found that the connection between Wong Sun's arrest and his statement had been attenuated because of the lack of proximity between the illegal arrest and the statement. The taint that arose from the illegal arrest had been dissipated. In the same case however, a codefendant named Toy made a statement which was contemporaneous with his arrest. Toy's statement was suppressed. The court's determination as to whether to suppress Wong Sun's and Toy's statements was affected by the time sequence. However, in lineup cases, temporal proximity seems to shed little light on the underlying inquiry as to whether the lineup was an exploitation of the primary illegality, an illegal search or seizure. (See W. LaFave, Search and Seizure sec. 11.4, at 657 (1978).) Therefore, Collins' identification of Dortch is but minimally affected by the fact that the lineup was held four hours after the arrest rather than several days later.

Intervening circumstances are a second *Sampson* consideration in

determining whether or not to suppress secondary evidence. In *Wong Sun*, the intervening circumstance was that Wong Sun was released from custody before coming back to make a statement. Such intervening circumstance gave assurance that Wong Sun's statement was made not because of the illegal police conduct but rather due to his own free will. In contrast the codefendant in *Wong Sun*, Toy, made a statement immediately thereafter and that statement was suppressed. In the instant cause, there were no intervening circumstances.

The last factor set out in *Sampson*, which is particularly relevant to a lineup situation and which *Brown* says should be given great weight in a decision as to whether or not to suppress secondary evidence, is the purpose and flagrancy of the police conduct. In arguing that the police conduct was flagrant, Dortch asserts that there was no warrant, that he was not advised as to why he was being arrested and that the police did not tell his wife the reason for the arrest. These factors bear on the legality of the arrest and not the flagrancy and purposefulness of the police conduct. We have already decided that Dortch's arrest was illegal and that the subsequent evidence was tainted under the holdings in the cases previously cited. If police conduct is found to be purposeful and flagrant, then the taint from the illegality is not attenuated or diminished. This is because the purpose of suppressing subsequent evidence is to prevent similar conduct on the part of the police in the future and to deny them any benefit from such conduct. However in the instant cause, the trial court specifically found that Dortch's arrest was not effected for the purpose of obtaining evidence. The police did not embark on the expedition in the hope that "something might turn up." (*Brown v. Illinois* (1975), 422 U.S. 590, 605, 45 L. Ed. 2d 416, 428, 95 S. Ct. 2254, 2262.) Because the police conduct was neither purposeful nor flagrant, we believe that the trial court's decision not to suppress the evidence was appropriate.

■ As Justice Powell observed in *Brown*, the question of attenuation inevitably is a matter of degree. Thus in weighing the relevant factors set out in *Sampson*—temporal proximity, intervening circumstances and, most importantly, the purposefulness of the police conduct—we concur with the trial court's finding that the taint emanating from the illegal arrest had been dissipated or attenuated. Consequently, the lineup and in-court identifications as well as Collins' testimony about the lineup identification were properly before the jury.

The defendant's second contention on appeal is that he was not allowed to effectively confront witnesses against him. Specifically, the

defendant claims that he was not allowed to effectively cross-examine one witness, a Ms. Steward, as to her bias, motive or interest in testifying against the defendant; that he was not allowed to effectively cross-examine Ethel Collins as to the circumstances of her day and her opportunity to observe the robbery; that he was not allowed to effectively cross-examine an investigating officer named Shine as to Collins' description of the scene; that he was not given an opportunity to take the stand and testify on his own behalf because the judge refused to suppress his prior convictions which were almost 10 years old and he would have been open to impeachment; and that the judge abused his discretion when he refused to allow one out of three photographs of the defendant to be admitted into evidence.

The above five matters of which the defendant complains falls within the sound discretion of the trial court. The defendant was allowed to cross-examine Steward, Collins and Shine. The trial court limited the cross-examination of Stewart because it was repetitive, the cross-examination of Collins because a description of her entire day was beyond the scope of direct examination, and the court limited the description by Investigator Shine because it involved information beyond his personal knowledge. The law is well settled that the trial court is vested with "substantial discretion" to determine both the manner and scope of cross-examination. (*People v. Peter* (1973), 55 Ill. 2d 443, 303 N.E.2d 398; *People v. McCain* (1963), 29 Ill. 2d 132, 193 N.E.2d 784.) Accordingly, the trial court's decision on such issues will not be overturned absent a showing of a clear abuse of that discretion resulting in manifest prejudice to the defendant. (*People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286.) Because we believe that the trial court's rulings were reasonable under the circumstances, we find no showing of clear abuse of discretion.

Likewise, we do not believe that the court was incorrect in refusing to suppress evidence of the defendant's prior convictions. The rule is well established that because the defendant had been convicted of a felony within 10 years of the time of trial, the conviction would have been a proper basis for impeachment. (See *People v. Cox* (1972), 8 Ill. App. 3d 1033, 293 N.E.2d 727, and *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) Because evidence of his prior convictions was permissible grounds for impeachment, it was obviously the defendant's trial strategy which kept him from testifying and not error attributable to the trial court.

In addition, we can see no prejudice accruing to the defendant because the trial court excluded one out of three similar photographs of his person from being admitted into evidence. Because the

trial judge allowed defense counsel to choose two of the three photographs to present to the jury, we fail to see how the judge's exercise of discretion in this area prejudiced the defendant. See *People v. Castillo* (1976), 40 Ill. App. 3d 413, 352 N.E.2d 340.

The defendant's third contention on appeal is that the prosecutor made prejudicial, inflammatory and erroneous statements in closing argument which denied him a fair trial. Specifically, this case "seems to be the People of the State of Illinois v. Ethel Collins and Barbara Steward, *** and Mr. Kling [the defendant's attorney] if you will recall, is the only one who ever said anything about a clean shaven person. Mr. Kling likes to testify." The prosecutor also said, "[Y]esterday we had the biggest snow storm of the season and today you have seen the biggest snow job in this courtroom." The prosecutor also made certain comments which related to the death of the victim.

■ While we do not sanction any remarks by a prosecutor in closing argument which border on prosecutorial abuse, it has been uniformly held that a prosecutor has great latitude in presenting his closing argument. (*People v. Smith* (1978), 64 Ill. App. 3d 1045, 382 N.E.2d 298.) Reviewing courts are reluctant to set aside a verdict on the ground of remarks made during closing argument and do so only where these remarks are clearly prejudicial. (*People v. Franklin* (1976), 42 Ill. App. 3d 408, 355 N.E.2d 634.) When the prosecutor's comments in this case are examined in the context of the entire record, we cannot find any indication that the defendant was prejudiced by the prosecutor's closing remarks. *People v. Hoggs* (1974), 17 Ill. App. 3d 67, 307 N.E.2d 800.

The defendant's final contention on appeal is that the trial court improperly read the *Prim* instruction to the jury after only five or six hours of deliberation when the jury was not deadlocked, causing a guilty verdict to be almost immediately rendered by the jury. Specifically, the defendant claims that the *Prim* instruction has a coercive effect on jurors to "heed the majority" and this effect deprived the defendant of the jury's impartial consideration of the evidence.

■ The record reveals that the jury was sent out at approximately 12:30 p.m. and was called back by the court at approximately 6:25 p.m. This time span included lunch and dinner. When the jury was recalled, the court advised them that the purpose of bringing them back was "for the court to make a determination whether or not you are making any progress, what the situation is with reference to your deliberations, whether or not further deliberations can result in a verdict being reached." The foreman responded that he believed with a reasonable degree of certainty that the jury could reach a verdict in

this case. He also stated that the current ballot was 11 to 1. The court then polled each juror individually to see if he believed that with additional deliberations a verdict could be reached. All jurors responded, "Yes." The court then gave the exact instruction approved by the Illinois Supreme Court in *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601. This instruction contained nothing of the "heed the majority theme" criticized by the court in *People v. Richards* (1968), 95 Ill. App. 2d 430, 237 N.E.2d 848. Therefore on the basis of this record, we cannot see how the trial court erred in reading this instruction to the jury.

For the above reasons, we affirm the judgment of the trial court.

Affirmed.

LINN and ROMITI, JJ., concur.