Leodis **DORTCH**, Petitioner–Appellant,

v.

Michael **O'LEARY** and Neil F. Hartigan, Attorney General of Illinois, Respondents–Appellees.

No. 87–1914.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1988.

Decided Dec. 13, 1988.

Melvin Avanzado, Law Student, Notre Dame, Ind., for petitioner-appellant.

Joan G. Fickinger, Ill. Atty. Gen. Office, Chicago, Ill., for respondents-appellees.

Before BAUER, Chief Judge, and WOOD, and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Petitioner Leodis Dortch appeals the order of the United States District Court for the Northern District of Illinois denying his petition for writ of habeas corpus. The petitioner was found guilty of murder and attempted armed robbery after a jury trial and sentenced to 28 years' imprisonment. The Appellate Court of Illinois affirmed the judgment of the trial court, *People v. Dortch*, 109 Ill.App.3d 761, 65 Ill.Dec. 308, 441 N.E.2d 100 (1982), and the Illinois Supreme Court denied review. Dortch filed his habeas petition in the district court pursuant to 28 U.S.C. § 2254, having exhausted his available remedies in the Illinois courts. The district court denied Dortch's petition and granted summary judgment for the respondents. Dortch appeals, alleging two constitutional errors requiring the issuance of a writ of habeas corpus: (1) the Illinois courts applied an improper constitutional standard to the lineup identification, thereby denying him an opportunity to fully and fairly litigate his fourth amendment claim; and (2) the prosecutor in his closing argument violated Dortch's fifth, sixth and fourteenth amendment rights by referring to Dortch's election not to testify at trial and unfairly attacking the integrity of defense counsel. We affirm.

## I.

On September 19, 1979, two men walked into a Church's Fried Chicken restaurant in Chicago, Illinois, and announced a robbery. One of the robbers fatally wounded an employee and then attempted to open the cash register. When this failed, the two men exited the restaurant. Ethel Collins, a customer in the restaurant at the time, witnessed the murder and testified that she had the opportunity to observe the gunman for approximately three minutes. Upon the arrival of the police at the crime scene, Collins described the gunman to Detectives Shine and Lazar of the Chicago Police Department.

Approximately four weeks into the investigation, Detectives Shine and Lazar filed a police report concluding that petitioner Dortch was the prime suspect in the murder of the Church's employee. Based on this report, three Chicago police officers arrested the petitioner in his home on October 17, 1979. Although the police report naming Dortch as the prime suspect was filed four days earlier, no warrant was obtained to effectuate Dortch's arrest. Within four hours of his arrest, Dortch was placed in a police lineup at the Area Four Homicide Station of the Chicago Police Department, and Ethel Collins identified him as the gunman.

Prior to trial, Dortch moved to quash his warrantless arrest alleging that he did not consent to the officers' entry into his home, and there were no exigent circumstances to justify their failure to obtain a warrant prior to effectuating the arrest. The trial court found that although there was probable cause to arrest Dortch, exigent circumstances did not exist, and the defendant did not give his consent for the police officers to enter his dwelling without a warrant; thus, under *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the arrest was illegal.

Dortch also moved to suppress Collins' lineup identification, the in-court identification and any testimony concerning the lineup identification as the fruit of his illegal arrest. At the outset, the trial court recognized that in some cases the connection between an illegal arrest and evidence derived therefrom can be so remote, suppression of the derivative evidence is not required. *See Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The trial court then found that the illegal arrest was not made for the purpose of having a lineup, obtaining evidence, or for otherwise exploiting the illegality of the arrest. In making this finding, the trial court emphasized that because probable cause existed to arrest Dortch, the illegality of his arrest derived solely from the police officers' entry into his home. That is, if the police had arrested Dortch outside his home, there would have been no constitutional violation and thus, no basis to quash his arrest or suppress any evidence derived therefrom. Based on these findings, the trial court ruled that under *Wong Sun* and *Brown* the taint from the illegal arrest had long dissipated. The court therefore denied Dortch's motion to suppress Collins' identification evidence and testimony.

On appeal to the Appellate Court of Illinois, Dortch argued that the trial court erred in denying his motion to suppress the identification evidence and testimony because this evidence was tainted by his illegal arrest. Accepting the trial court's finding that Dortch's arrest was illegal, the Illinois appellate court began its analysis by stating the rule that "[n]ot all evidence obtained from illegal searches and seizures in violation of the Fourth Amendment is suppressible." *Dortch*, 65 Ill.Dec. at 311, 441 N.E.2d at 103 (citing *Wong Sun* and *Brown, supra*). The court, again relying on *Wong Sun*, further stated:

"The guiding question ... is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

*Dortch*, 65 Ill.Dec. at 311, 441 N.E.2d at 103 (quoting *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455). In determining whether the taint of Dortch's illegal arrest was purged from Collins' lineup identification, the Appellate Court of Illinois employed a four-factor analysis: "the temporal proximity of the illegality to the evidence obtained; the presence of intervening circumstances; the purpose and flagrancy of the police conduct; and the presence of or absence of *Miranda* warnings." *Dortch*, 65 Ill.Dec. at 312, 441 N.E.2d at 104. These factors were first set forth in *Brown v. Illinois, supra*, and had been employed in another Appellate Court of Illinois decision, *People v. Sampson*, 86 Ill.App.3d 687, 41 Ill.Dec. 657, 408 N.E.2d 3 (1980). The court recognized that the Supreme Court in *Brown* placed particular emphasis on the presence of *Miranda* warnings and the purpose and flagrancy of the official misconduct.

At the outset, the Illinois appellate court recognized that unlike *Brown*, this case did not involve a confession and thus the presence of *Miranda* warnings was irrelevant. The court next concluded that the temporal proximity between the illegal arrest and the lineup was four hours, as contrasted with two hours in *Brown*, and that there were no intervening circumstances during that four-hour time period. With regard to the fourth factor, the court stated:

"If police conduct is found to be purposeful and flagrant, then the taint from the illegality is not attenuated or diminished.

This is because the purpose of suppressing evidence is to prevent similar conduct on the part of the police in the future and to deny them any benefit from such conduct. However, in the instant case, the trial court specifically found that Dortch's arrest was not effected for the purpose of obtaining evidence. The police did not embark on the expedition in the hope that 'something might turn up.' "

*Dortch,* 65 Ill.Dec. at 312–13, 441 N.E.2d at 104–05 (quoting *Brown,* 422 U.S. at 605, 95 S.Ct. at 2262, 45 L.Ed.2d at 428). Based on the relevant factors set forth in *Brown,* the Appellate Court of Illinois concluded that the taint from Dortch's illegal arrest was sufficiently dissipated to admit Collins' lineup and in-court identifications and testimony into evidence, and accordingly affirmed the trial court's denial of Dortch's motion to suppress.

In his habeas petition, the petitioner again argues that the court's failure to suppress the lineup and in-court identifications allegedly tainted by his illegal arrest amounted to a denial of his due process right to a fair trial. The district court held that petitioner was barred from seeking review of this claim under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), because he had already fully litigated the issue in the Illinois state courts. In *Stone,* the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 482, 96 S.Ct. at 3046, 49 L.Ed.2d at 1080.

Dortch contends on appeal that *Stone v. Powell* does not bar federal review of his fourth amendment claims because the Illinois courts failed to apply the proper constitutional standards. In support of this argument, Dortch places substantial reliance on *Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir.1978). The primary issue in *Gamble* was whether the petitioner's fourth amendment claim had been "afford-

ed an 'opportunity for full and fair litigation' within the meaning of *Stone.*" *Id.* at 1164. Because *Stone* did not define its "full and fair litigation" requirement, the Tenth Circuit extensively analyzed other opinions addressing the requirement set forth in *Stone* and concluded that "full and fair litigation" involves more than mere opportunity to present fourth amendment arguments but also includes "at least colorable application of the correct fourth amendment constitutional standards." *Gamble,* 583 F.2d at 1165. Petitioner's reliance on *Gamble* is misplaced. The Tenth Circuit based its holding that *Stone v. Powell* was not a bar to *Gamble's* fourth amendment claim on the fact that the Oklahoma courts had ignored controlling federal precedent, namely *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The Oklahoma courts failed to note much less distinguish the *Brown* decision; neither did they incorporate implicitly the factors set forth in *Brown.* From the facts in *Gamble* it is clear that the state court had declined to apply the appropriate federal case law.

The present case is clearly distinguishable from *Gamble.* Here, Dortch presents this court with the same arguments and case law he presented in the Illinois state courts. The petitioner relies almost exclusively on *People v. Sampson,* 86 Ill.App.3d 687, 41 Ill.Dec. 657, 408 N.E.2d 3 (1980), an Illinois appellate court decision holding that *under the particular facts of that case,* lineup identification evidence should have been suppressed as fruit of an illegal arrest. The *Sampson* court employed a factual analysis based on the factors set forth in *Brown v. Illinois,* the very case that the Oklahoma courts in *Gamble,* ignored. *See Sampson,* 41 Ill.Dec. at 663, 408 N.E.2d at 9. *See also Gamble,* 583 F.2d at 1165. The petitioner seems to overlook the Illinois appellate court's recognition in *Dortch* that the *Sampson* analysis was derived from *Brown.* More importantly, the petitioner ignores the *Dortch* court's factual analysis based explicitly on *Brown* and identical to the analysis employed in *Sampson.* He further ignores the specific refer-

ences in *Dortch* to the Supreme Court's reasoning behind the analysis set forth in *Brown. See Dortch,* 65 Ill.Dec. at 312–13, 441 N.E.2d at 104–05. Because the *Dortch* court analyzed the facts of this case under the factors set forth in *Brown,* the petitioner is hard pressed to claim that the appellate court in *Dortch* ignored the controlling constitutional standards set forth in *Brown.*

Moreover, because the *Dortch* and *Sampson* courts employed the same analysis, it becomes clear that the petitioner is attempting to have this court reverse the holding of the Illinois appellate court in *Dortch* solely because he is unhappy with the *result* in this case as opposed to the constitutional analysis employed to reach that result. We refuse to do so because "[i]t is precisely this type of consideration *Stone v. Powell* precludes." *Sanders v. Israel,* 717 F.2d 422 (7th Cir.1983), *cert. denied,* 465 U.S. 1033, 104 S.Ct. 1302, 79 L.Ed.2d 701 (1984) (citations omitted). Indeed, in *United States ex rel. Maxey v. Morris,* 591 F.2d 386, 389 (7th Cir.), *cert. denied,* 442 U.S. 912, 99 S.Ct. 2828, 61 L.Ed.2d 278 (1979), this court stated:

> "*Stone* thus establishes that state court constitutional holdings, at least in the context of Fourth Amendment questions involving application of the exclusionary rule, are not subject to collateral review merely because the federal courts would decide the issue differently." [1]

This court has also recently stated that "[a] federal habeas corpus petitioner has 'fairly presented' a claim to a state court if he has clearly informed the state court of a factual basis of that claim and has argued to the state court that those facts constituted a violation of the petitioner's constitutional rights." *Arrowood v. Clusen,* 732 F.2d 1364, 1368 (7th Cir.1984), *quoted in United States ex rel. Patton v. Thieret,* 791 F.2d

543, 547 (7th Cir.), *cert. denied,* 479 U.S. 888, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986).

■ The petitioner has presented both the Illinois trial court and the Appellate Court of Illinois with a complete factual basis to consider his claim that Collins' lineup identification should be suppressed as the fruit of his illegal arrest. Both courts carefully and thoroughly analyzed the facts and applied the proper constitutional case law to the facts.[2] Because the petitioner's claims have been considered at length in the Illinois court system, *Stone v. Powell* mandates that we refuse to reconsider them here. We refuse to consider them and affirm the findings of the district court.

## II.

Petitioner next contends that the prosecutor violated his fifth amendment privilege against self-incrimination by focusing on his election not to testify at trial and his sixth amendment right to counsel and fourteenth amendment right to a fair trial by unfairly attacking the integrity of defense counsel in his closing argument.

■ At the outset, we dispose of petitioner's sixth amendment right to counsel claim. The petitioner raises this claim for the first time on appeal to this court. The law is clear that any claim not presented to the district court is waived on appeal. *See Shillcutt v. Gagnon,* 827 F.2d 1155, 1160 (7th Cir.1987). Even if the petitioner had presented the right to counsel claim in his original petition to the district court, we would decline to consider the merits of the claim because the petitioner failed to raise the issue before the Illinois state courts. A petitioner who fails to raise a claim in the state courts cannot thereafter raise it for the first time in a petition for writ of habeas corpus. *Washington v. Lane,* 840

---

1. It is interesting to note that in *Maxey* this court was presented with the *Gamble* decision, but, as we do here, factually distinguished the *Gamble* analysis. 591 F.2d at 390.

2. Because both Illinois courts found that the lineup identification procedure was not tainted by Dortch's illegal arrest, it became unnecessary to address the issue of whether the in-court

identification was tainted by the lineup identification. We note that even if the Illinois courts had found otherwise, the in-court identification would not necessarily be excluded as tainted by the prior lineup identification. *See United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

F.2d 443, 445 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 157, 102 L.Ed.2d 128 (1988). 28 U.S.C. § 2254 requires that state courts have a "fair opportunity" to consider a state prisoner's constitutional claim before a federal court can consider the claim in the prisoner's habeas petition. *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3, 7 (1982). The petitioner failed to raise the right to counsel claim on direct appeal to the Appellate Court of Illinois. As a result, the petitioner has waived the claim under the Illinois Post–Conviction Hearing Act, his only apparent avenue of state court relief at this point in time.[3] *See* Ill.Rev.Stat. ch. 38, ¶ 122–1 *et seq.; People v. Logan,* 72 Ill.2d 358, 21 Ill.Dec. 186, 381 N.E.2d 264 (1978) (holding that the Act was "not intended to be a device by which issues that could have been raised and considered on the original appeal of a conviction can again be considered....").

This court recently stated the consequences of a waiver in state court: "Waiver in state court of a specific issue prevents federal habeas corpus relief based on that same issue absent a showing of cause and prejudice." *Sotelo v. Indiana State Prison,* 850 F.2d 1244, 1252 (7th Cir.1988) (citations omitted). Because the petitioner has failed to demonstrate "cause" and to explain why he did not raise the right to counsel claim in the Illinois state courts, he waives this claim in federal court. *Id.* at 1252. We shall consider, however, the petitioner's fifth and fourteenth amendment claims properly raised in his habeas petition.

### A.

■ With respect to his fifth amendment claim, the petitioner argues that the prosecutor's remarks made during closing argument were direct comments on petitioner's failure to testify at trial:

"MR. KAPLAN [prosecutor]: Now, Mr. Kling [defense counsel] has said a lot of things here and Mr. Kling, if you recall, is the only one who has ever said anything about a clean-shaven person. Mr. Kling likes to testify. He likes to stand up here and tell you things that never came from the witness stand. He told you that Leodis Dortch doesn't have to testify. I couldn't even comment on that. I have no way to comment on that but he will stand up and say, Leodis Dortch didn't testify because, let's assume he did and say that he was at his house. Mr. Kling likes to testify, because we know that Leodis Dortch was not in his house, he was not in a movie, he was not reading a book. He was shooting a man down on September 19, 1979, but Mr. Kling will testify for his client. Mr. Dortch will not testify. Mr. Kling testifies for him."

It is well settled that the fifth amendment and 18 U.S.C. § 3481 prohibit a prosecutor from adversely commenting before a jury on a defendant's failure to testify. *See Griffin v. California,* 380 U.S. 609, 612–13, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106, 108–09 (1965); *United States v. Dominguez,* 835 F.2d 694, 699 (7th Cir.1987). The district court made the following findings of fact regarding the above comments:

"Here, the inference from the nature of the comments, including disarming comments that the prosecutor 'couldn't even comment ... [has] no way to comment' on the fact that the defendant does not have to testify, is that they were intended to reflect on the accused's silence or at least were of such a character that the jury would naturally and necessarily take them as such. The comments were not isolated but, particularly the references to defense counsel's 'testifying' were made throughout rebuttal closing argument, and the only instruction given which could be considered curative was the standard instruction given at the end of the trial that the fact that the defend-

---

**3.** The Act provides: "Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States ... may institute a proceeding under this Article." Ill.Rev.Stat. ch. 38, ¶ 122–1.

ant did not testify should not be considered in arriving at a verdict."[4]

On appeal, the respondent admits that some of the prosecutor's remarks constitute direct comment on the petitioner's failure to testify at trial.[5]

■ Petitioner correctly states that when a constitutional violation is established, the government must demonstrate beyond a reasonable doubt that the petitioner would have been convicted absent the prosecutor's alleged unconstitutional remarks. *United States v. Hasting,* 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96, 107 (1983). In other words, "such extreme prosecutorial misconduct calls for reversal unless the government can demonstrate that the error was harmless beyond a reasonable doubt." *United States v. Pirovolos,* 844 F.2d 415, 425 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988) (citing *Chapman v. California,* 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 709–11 (1967)); *Williams v. Lane,* 826 F.2d 654, 666 (7th Cir.1987); *Phelps v. Duckworth,* 772 F.2d 1410, 1413 (7th Cir.) (*en banc*), *cert. denied,* 474 U.S. 1011, 106 S.Ct. 541, 88 L.Ed.2d 471 (1985). In order to prove that the error in this case was harmless, the government must show that the case against Dortch was so overwhelming that "it would not have likely changed the re-

sult of the trial." *United States v. Perez–Leon,* 757 F.2d 866, 876 (7th Cir.), *cert. denied,* 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed. 2d 80 (1985). *See also United States ex rel. Burke v. Greer,* 756 F.2d 1295, 1302 (7th Cir.1985) (citations omitted).

■ The district court found that the evidence against Dortch was overwhelming and despite the impropriety of the prosecutor's comment, that the fifth amendment violation was harmless beyond a reasonable doubt. In making this finding, the district court focused on Ethel Collins' unequivocal identification of Dortch and the admission by Dortch to Barbara Stewart that he had shot the man in Church's Fried Chicken. The petitioner argues that the district court erred in finding that the evidence against him was overwhelming for two reasons: the testimony of Barbara Stewart regarding petitioner's inculpatory statement to her could best be contradicted by petitioner himself; and Ethel Collins' lineup and in-court identifications of the petitioner and testimony about the lineup were tainted as a result of petitioner's illegal arrest.

Initially, the petitioner argues that the testimony of Barbara Stewart regarding his inculpatory statement to her was not substantial because the petitioner was the best person to rebut such testimony. In support of this argument, the petitioner cites *United States ex rel. Burke v. Greer,*

---

4. This court has repeatedly held that this type of jury instruction is "ordinarily not sufficient" to cure constitutional errors. *See, e.g., United States ex rel. Burke v. Greer,* 756 F.2d 1295, 1303 (7th Cir.1985); *United States v. Buege,* 578 F.2d 187, 189 (7th Cir.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978).

5. The government argues that some of the prosecutor's comments were excusable under the "invited response doctrine." Under this doctrine, improper conduct by defense counsel may invite a very limited rebuttal by the prosecution that is acceptable under the circumstances of the case albeit equally improper by objective standards. *See United States v. Young,* 470 U.S. 1, 12–13, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1, 10–11 (1985); *United States v. Torres,* 809 F.2d 429, 435–36 (7th Cir.1987). In this case the prosecution referred to defense counsel's closing arguments as "testimony" and noted that Dortch had not testified, instead relying on his defense attorney to testify in his behalf. The government argues that the defense counsel made the initial reference to Dortch's failure to

testify, and any prosecutorial response was therefore invited.

Resolution of this question is unnecessary. Assuming for the moment that some of the prosecutor's remarks were invited, the government admits in its brief that other remarks made in the same context were in violation of Dortch's fifth amendment rights. As we will discuss, *infra,* such a violation triggers a harmless error analysis. In contrast, under the invited response doctrine the focus is "the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly." *Torres,* 809 F.2d at 435. Under both standards, the ultimate inquiry is whether the outcome of the trial would have changed absent the prosecutor's remarks. Because the standards are so closely related, we see no merit in considering separately remarks made in the same context during closing argument. We will therefore analyze the prosecutor's remarks in their entirety under the harmless error standard.

756 F.2d 1295 (7th Cir.1985). In *Burke,* the prosecutor in closing argument asserted that the testimony of the government's witnesses was "uncontradicted." This court held that because under the particular facts of *Burke* no one other than the defendant could contradict the testimony of the government's witnesses, the prosecutor indirectly commented on the defendant's election not to testify and, therefore, committed constitutional error. *Id.* at 1301–02. Because the prosecutor in this case directly commented on Dortch's failure to testify, the testimony of Barbara Stewart, which could best be contradicted by Dortch himself, would not in and of itself be substantial enough to support a holding that the evidence against Dortch was overwhelming. However, petitioner seems to overlook the fact that in *Burke* this court held that the constitutional error in that case was not harmless because of the "lack of substantial direct evidence to show that [the defendant] was the second assailant." *Id.* at 1302.

█ The record reflects that substantial direct evidence exists to support a holding that the alleged constitutional error committed by the prosecutor was indeed harmless. Specifically, Collins' lineup and in-court identification of the petitioner constitute proof beyond a reasonable doubt that despite the prosecutor's remarks, the jury would have returned a verdict of guilty.[6]

The record establishes that Collins observed the gunman shoot the victim from a distance of approximately two feet in a well-lit restaurant. After fatally wounding the victim, the gunman turned and looked directly at Collins. During the next three minutes, Collins had another opportunity to view the gunman while he was attempting to open the cash register. Upon exiting the restaurant, the gunman and his companion looked inward as they walked down the sidewalk. Shortly after the incident Collins provided a description of the gunman to the Chicago police. During the subsequent police investigation, Collins viewed photographs and two lineups in which the petitioner did not participate and in each instance correctly pointed out the lack of the gunman's picture or presence. However, hours following Dortch's arrest, he was placed in the third lineup that Collins viewed. At this lineup, Collins identified the petitioner as the gunman. We take cognizance of the fact that Collins did not identify anyone as the gunman in any of the prior lineups. Conversely, she conclusively stated that the petitioner was the gunman in the first lineup in which he participated. Even if the petitioner had testified, he would have been unable to refute these facts. Furthermore, Barbara Stewart's testimony regarding the petitioner's inculpatory statement to her, although insufficient standing alone, serves to corroborate Collins' identifications of Dortch as the gunman in this case. We agree with the finding of the district court that the evidence against Dortch was overwhelming and that the alleged constitutional error committed by the prosecutor in closing argument was harmless beyond a reasonable doubt.

### B.

█ With respect to petitioner's fourteenth amendment claim, namely that he was denied a fair trial, the petitioner references other statements made by the prosecutor in closing argument: "Mr. Kling [defense counsel] likes to testify"; and "Yesterday we had the biggest snow storm of the season, and today you have seen the biggest snow job in the courtroom." The petitioner alleges that these statements were insinuations that defense counsel dis-

---

**6.** As we discussed, *supra,* the petitioner's claims that under the fourth amendment this evidence is tainted by his illegal arrest will not be considered by this court. The petitioner had a full and fair opportunity to litigate this claim in the Illinois court system; thus, we are barred by *Stone v. Powell* from reconsidering the claim on habeas review. The Appellate Court of Illinois was the last state court to review the petitioner's fourth amendment claim; therefore, that court's holding that this evidence was properly admitted at trial will stand. We will therefore consider this properly admitted evidence in our determination of whether the evidence against the petitioner was so overwhelming that the prosecutor's constitutional violation was harmless error.

torted the evidence and that defense counsel was a liar.

In evaluating whether the prosecutor's remarks denied the petitioner his right to a fair trial, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144, 157 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431, 437 (1974)). *See also Shepard v. Lane*, 818 F.2d 615, 621 (7th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987).

> "The heart of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial when viewed in its entirety, not the culpability of the prosecutor.... The appropriate inquiry, therefore, is not whether the prosecutor's conduct is conduct which is undesirable, erroneous, or even 'universally condemned,' but [whether] it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."

*United States ex rel. Crist v. Lane*, 745 F.2d 476, 482 (7th Cir.1984), *cert. denied*, 471 U.S. 1068, 105 S.Ct. 2146, 85 L.Ed.2d 503 (1985) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 373 (1973)). In *Crist*, we further noted that "[t]he essence of due process is fundamental fairness. The Constitution guarantees a fair trial, not a perfect one." 745 F.2d at 482. Moreover, "the well-settled standard of review [is] that we are to consider the prosecutor's conduct not in isolation, but in the context of the trial as a whole...." *United States v. Chaimson*, 760 F.2d 798, 809 (7th Cir.1985). *See also United States v. Zylstra*, 713 F.2d 1332, 1339 (7th Cir.), *cert. denied*, 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983).

Under this standard of review, we agree with the reasoning of the Illinois courts and the district court that when examined in context of the entire record, there is no indication that the remarks referenced above were either so inflammatory or prejudicial to the petitioner's case that he was deprived of a fair trial. *United States v. Buchbinder*, 796 F.2d 910, 919 (7th Cir. 1986); *United States v. Howard*, 774 F.2d 838, 848 (7th Cir.1985); *Chaimson*, 760 F.2d at 809; *Zylstra*, 713 F.2d at 1339. We affirm the finding of the district court on this issue.

### III.

We hold that the district court properly analyzed the facts of the case and applied the appropriate legal principles to those facts. Accordingly, the district court's denial of Dortch's petition for writ of habeas corpus is

AFFIRMED.