Michael JOHNSON, a minor, by next friends, Jim JOHNSON and Anne Johnson, Jim Johnson and Anne Johnson, Plaintiffs–Appellants,

v.

DUNELAND SCHOOL CORPORATION, Dr. Kenneth Payne, in his capacity as Superintendent of the Duneland School Corporation, Joan McCormick, in her capacity as Duneland District Director, et al., Defendants–Appellees.

No. 95–3390.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1996.

Decided Aug. 12, 1996.

Lawrence M. Hansen, Landau, Omahana & Kopka, Merrillville, IN, Michael S. Reed (argued), Indianapolis, IN, for Plaintiffs–Appellants.

William F. Satterlee, III, Hoeppner, Wagner & Evans, Valparaiso, IN, for Duneland School Corp., Kenneth Payne, Joan McCormick, Porter County Special Education Cooperation, Fred McNulty and Deborah Owens.

Deborah W. Owens, Hinsdale, IL, for Duneland School Corporation and Porter County Special Education Cooperation.

John B. Drummy, Thomas E. Wheeler, II (argued), Kightlinger & Gray, Indianapolis, IN, for Porter County Special Education Cooperation.

Kathryn Symmes Kirk, Janet L. Parsanko, Office of the Attorney General, Indianapolis, IN, for Cynthia Stanley, Kevin McDowell, Indiana Board of Special Education Appeals and Indiana Department of Education.

Before ESCHBACH, MANION, and EVANS Circuit Judges.

ESCHBACH, Circuit Judge.

Plaintiff-Appellant, Michael Johnson, is a disabled child who is eligible under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* (the "IDEA"), for special educational services. The IDEA entitles a child like Michael to a free public education tailored to the child's needs until he or she turns 21. The IDEA establishes a system of procedural protections that en-

sures that the child's parents, teachers, and local educational officials work together to establish an individualized and appropriate educational plan ("IEP") for the child. Michael and his parents, Jim and Anne Johnson, (collectively, the Johnsons) came to the district court seeking judicial review of a state administrative decision, as allowed by 20 U.S.C. § 1415(e)(2), and a declaration that certain aspects of the administrative proceeding below denied them due process. The district court entered summary judgment against the Johnsons and in favor of each of the defendants. Because we agree with the district court that the Johnsons were not denied due process, we affirm.

I.

Michael is a teenaged boy with a medical history of retardation, attention deficit hyperactivity disorder, leukemia, and acute seizures. Michael was a student in Defendant Duneland School Corporation's school and he received special educational services through the school and through Defendant Porter County Special Education Interlocal (hereinafter, "the school" refers to both Duneland and the Interlocal). The Johnsons and the school have a history of disagreement regarding Michael's evaluation and classification. This appeal arises out of a dispute over the development of an IEP for the 1992–93 school year.

During the 1991–92 school year, Michael's IEP called for him to spend 93 percent of his day in special education classes and 7 percent in a "mainstream" classroom. In the fall of that year, Michael's teachers noted that his seizure activity had worsened, his behavior had decreased in appropriateness, and he had increased difficulty meeting expectations in his mainstream classes. In April of 1992, Michael stopped attending school and received homebound instruction on the recommendation of his treating physician, Dr. Huttenlocher, because Michael suffered a head injury and an increased number of seizures. In the summer of 1992, Michael took an experimental drug, Vigabatrin, to control his seizures. Based on Michael's improved condition, Dr. Huttenlocher recommended that Michael resume attending school with individualized instruction, a full-time aide, and careful supervision.

On August 25, 1992, an annual case review was convened to develop an IEP for the 1992–93 school year. The school made clear at this case conference that it would need to evaluate Michael prior to developing an IEP for him. The school was concerned because Michael had been out of school for some time and the school had no medical information on Michael subsequent to his taking the experimental medication. The Johnsons and the school disagreed regarding the amount of time that Michael should spend in school and whether Michael should have a three-year reevaluation as required by the IDEA, 34 C.F.R. § 300.534(b). The case conference was recessed and reset for September 2, 1992. On August 28, the school notified the Johnsons by letter that without a three-year reevaluation, Michael's medical records, and Dr. Huttenlocher's input, the school could not design an appropriate IEP.

The Johnsons did not attend the September 2, 1992 meeting, notifying the school one hour prior. The case conference reconvened[1] and developed an IEP calling for interim homebound placement until the three-year reevaluation could be accomplished. The IEP was sent to the Johnsons for signature. Rather than signing, the Johnsons filed a request for a due process hearing with the Indiana Department of Education seeking a specific placement for Michael and seeking reimbursement for an independent evaluation that Michael was undergoing at the Johnsons' behest. The Johnsons did not request a due process hearing regarding the reevaluation issue and did not challenge the propriety of the reevaluation. Thus, the school filed a letter with the Indiana Department of Education requesting that the Johnsons be ordered to produce Michael for reevaluation and that the Johnsons be required to sign the releases for medical information which would

---

1. The regulations provide that parents must be given "the opportunity to attend" a case conference, 511 IAC 7–12–1(c), but the case conference may convene and make decisions without the parent if "the parent chooses not to participate." 511 IAC 7–12–1(e)(3).

allow the school to defend against their hearing request and assist the school in developing an appropriate IEP for Michael.

In a November 16, 1992 hearing, an independent hearing officer ("IHO") ordered Dr. Huttonlocher to provide his testimony and medical records to both parties. Dr. Huttonlocher provided the information the school needed, in conjunction with the reevaluation, to do the IEP. The IHO continued the hearing until December 16, 1992, pending a resolution of the matter through the three-year reevaluation and the drafting of an IEP based on this information.

On November 25, 1992, a case conference was held and the school proposed that Michael attend school consistent with Dr. Huttenlocher's recommendations as an interim placement until the reevaluation took place. In response to the new IEP placing Michael in school consistent with Dr. Huttenlocher's recommendations, the Johnsons refused to place Michael in school at all.

On December 7, 1992, the IHO issued an Order requiring that the three-year reevaluation of Michael take place by December 14, 1992, and that the results be faxed to the IHO and all counsel of record for use at the hearing. The evaluation did not take place. The Johnsons then sought reconsideration of the IHO's December 7 order. In a prehearing Order dated January 1, 1993, the IHO reconsidered the order, rejected the Johnsons' challenge, and again ordered that the Johnsons present Michael for the three-year reevaluation in order to provide the information necessary to develop an IEP.

The IHO held a number of other hearings and issued an order directing that the August/September, 1992, IEP remained effective until a three-year reevaluation was conducted. On March 1, 1993, the Johnsons requested that the Indiana Board of Special Education Appeals ("BSEA") review the IHO's decision. The BSEA upheld the IHO's decision.

Plaintiffs sought judicial review of the administrative action in the district court. Both parties agreed that the district court did not need to hear additional evidence and that the issues should be decided upon the extensive administrative record. In such circumstances, the district court resolves the issue though summary judgment. *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 123, 130 L.Ed.2d 67 (1994). The district court granted summary judgment for each of the defendants.

## II.

■ The Johnsons raised a number of issues before the district court that they have not raised before this court. We do not consider those issues.[2] The Johnsons also raise a number of issues on appeal that were not raised before the district court. Plaintiffs have waived these issues and we decline to address them. *See, e.g., Dortch v. O'Leary*, 863 F.2d 1337, 1342 (7th Cir.1988), *cert. denied sub nom. Dortch v. Cohn*, 490 U.S. 1049, 109 S.Ct. 1961, 104 L.Ed.2d 429 (1989). There is one issue that remains properly before us today: Whether the IHO violated the Johnsons' due process rights by its orders of December 7, 1992, and January 1, 1993.

■ We review *de novo* the entry of summary judgment. The district court's ruling on a motion for summary judgment under the IDEA determines the validity of the administrative decision. *See Hunger*, 15 F.3d at 669–70. Judicial review of state administrative action under 20 U.S.C. § 1415(e)(2) is limited to two inquiries: First, whether the state has complied with the IDEA's administrative procedures. Second, whether the IEP is reasonably calculated to provide educational benefits to the child. If these requirements are met, we require no more. *Hendrick Hudson District Board of Education v. Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 3050–51, 73 L.Ed.2d 690 (1982).

Plaintiffs' claim falls into the first Rowley inquiry, whether the state violated the IDEA's procedural requirements. Specifically, Plaintiffs claim that the IHO erred in finding that the school had an absolute right to conduct the three-year reevaluation and

---

2. For example, Plaintiffs have preserved no claims against the BSEA.

that the IHO erred in ordering that the three-year reevaluation take place without hearing testimony or receiving evidence on the subject.

■ Both federal and state regulations promulgated to carry out the IDEA's mandates require that a reevaluation be conducted every three years, or more frequently "if conditions warrant, or if the child's parent or teacher requests an evaluation." 34 C.F.R. § 300.534(b); 511 I.A.C. § 7–10–3(*o*); *see also Board of Education of Murphysboro v. Illinois Board of Education,* 41 F.3d 1162, 1169 (7th Cir.1994) (regulations require reevaluation every three years or more often if conditions require). Every circuit court to address the issue has held that 34 C.F.R. § 300.534(b) grants schools a right to conduct a three-year reevaluation. These courts reason that because the school is required to provide the child with an education, it ought to have the right to conduct its own evaluation of the student and the school cannot be forced to rely solely on an independent evaluation conducted at the parents' behest. *Andress v. Cleveland Independent School District,* 64 F.3d 176 (5th Cir.1995) ("If a student's parents want him to receive special education under IDEA, they must allow the school itself to reevaluate the student and they cannot force the school to rely solely on an independent evaluation."), *petition for cert. filed,* 64 U.S.L.W. 3780 (U.S. Dec. 22, 1995) (No. 95–1837); *Gregory K. v. Longview School Dist.,* 811 F.2d 1307, 1315 (9th Cir. 1987) ("If the parents want [the student] to receive special education under the Act, they are obliged to permit such testing."); *Dubois v. Connecticut State Bd. of Educ.,* 727 F.2d 44, 48 (2d Cir.1984) ( "[T]he school system may insist on evaluation by qualified professionals who are satisfactory to the school officials."); *Vander Malle v. Ambach,* 673 F.2d 49, 53 (2d Cir.1982) (School officials are "entitled to have [the student] examined by a qualified physician of their choosing."). We agree with the reasoning of these courts.

The implementing regulations promulgated pursuant to the IDEA support the conclusion that the school had a right to conduct a three-year reevaluation. While parental consent is generally necessary prior to preplacement and initial placement assessments, 34 C.F.R. § 300.504(b)(1), parental consent is not required prior to the three-year reevaluation. *Id.* & n. 1 ("Any changes in a child's special education program after the initial placement are not subject to the parental consent requirements in paragraph (b)(1) of this section . . . ."). In the instant case, the school had a right to conduct a three-year reevaluation, and this right was not limited by parental consent. Michael's condition had changed since he last attended school. Therefore, the IHO properly ordered that the three-year reevaluation take place.

■ In *Andress v. Cleveland Independent School District,* 64 F.3d 176, the Fifth Circuit held that the school's right to conduct a three-year reevaluation is absolute. The court rejected the proposition "that there was an exception to this rule when further testing by school officials would harm the child medically and psychologically." *Id.* at 178. We need not decide whether the school's right is "absolute" in that sense. The regulations provide that "State procedures govern the public agency in overriding a parent's refusal to consent" when the State law requires parental consent prior to a three-year reevaluation. 34 C.F.R. § 300.505(b)(2). Indiana has a regulation that permits a parent to request a hearing on a proposed reevaluation but allows the reevaluation to take place without parental consent absent such a request. 511 I.A.C. 7–10–3(q) ("The parent may appeal the public agency's proposed reevaluation; however, unless the parent requests a due process hearing, the reevaluation shall proceed as scheduled without written parental consent."). The Johnsons did not request a due process hearing on the reevaluation issue. The Johnsons filed a request for a due process hearing with the IDOE seeking a specific placement for Michael and seeing reimbursement for an independent evaluation. This did not rise to the level of a request for a due process hearing about the school's proposed three-year evaluation. Thus, the school's right to reevaluate was "absolute" in this case because the Johnsons did not request a due process hearing on the reevaluation.

The Johnsons also claim that the school did not give proper notice of the reevaluation pursuant to Indiana's regulations.

> The public agency shall provide the parent of each student due for a reevaluation with adequate written notice of its intent to conduct the reevaluation. That notice shall:
>> (1) be given verbally at the student's annual case review meeting and included in the student's annual case review report the year before the reevaluation will be conducted; and
>> (2) provided again in writing no less than twenty (20) instructional days prior to the projected date of the reevaluation.

511 I.A.C. 7–10–3(p).[3] The record indicates, however, that the school properly gave notice to the Johnsons during the August 25, 1992, meeting. The only question is whether this meeting constituted "the student's annual case review." The answer is that it did.

In the ordinary situation, an annual case review to develop an IEP for the 1992–93 school year would be conducted either at the end of the 1991–92 school year or during the summer prior to the 1992–93 school year. 34 C.F.R. § 300.343 & note; cf. 511 I.A.C. 7–3–5 (defining "annual case review" as "the annual meeting of the case conference committee which is conducted to review and revise, if needed, a student's individualized education program."). Michael's annual case review to develop an IEP for the 1992–93 school year ordinarily would have occurred in May of 1992. The review did not occur then because Michael had suffered an increase in seizure activity and a head injury resulting in his withdrawal from school. The annual case review was postponed until such time as it appeared that Michael would be physically capable of returning to school. Thus, the annual case review occurred on August 25, 1992.

The Johnsons argue that we should look to the May 21, 1991, annual case review because they suggest that this was the "report the year before the reevaluation will be conducted." We disagree. The August 25, 1992, review that ordinarily would have occurred in May, 1992, was not conducted out of concern for its effect on Michael's condition. This delay does not change the nature of the meeting. The regulations give the school discretion regarding the timing of the annual case review. The school properly exercised its discretion to protect Michael's best interests by delaying the case review. The August, 1992, report is the "report the year before the reevaluation will be conducted." Furthermore, even if we accepted the Johnsons' argument, the school was not required to give notice in the May, 1991, case review report of its intent to reevaluate Michael. The regulation relied on by the Johnsons, 511 I.A.C. 7–10–3, was not promulgated until December 9, 1991, approximately seven months after the May, 1991, annual case review, and its predecessor regulation contained no similar notice requirement.

Finally, we note that the Johnsons also requested and received a reconsideration of the IHO's order of December 7. The Johnsons filed a "Motion Objecting to Order For Evaluation by Respondents" and discussed the matter before the IHO in a pre-hearing conference on December 30, 1992. The IHO issued an Order on January 1, 1993, that reaffirmed the prior decision and ordered that the three-year reevaluation take place. Therefore, the Johnsons received all of the process that was due.

The district court's judgment is AFFIRMED.

---

**3.** The Johnsons also cite federal regulations in support of their argument that the school did not provide proper notice of the reevaluation. *See* 34 C.F.R. § 300.504(a) (prior notice required before reevaluation). The Johnsons did not raise this provision before the district court and raised it before this court only in their *Reply Brief*. As noted previously, we decline to consider issues not properly raised. *See also United States v. Feinberg*, 89 F.3d 333, 340–41 (7th Cir. 1996) (Rule 28 of the Federal Rules of Appellate Procedure limits issues that may be raised in a reply brief).