Larry James GAMBLE,
Petitioner-Appellee,

v.

STATE OF OKLAHOMA,
Respondent-Appellant.

No. 77–1284.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 15, 1978.

Decided Sept. 20, 1978.

**1162**

Ross N. Lillard, III, Asst. Atty. Gen.. Oklahoma City, Okl. (Larry Derryberry, Atty. Gen., Oklahoma City, Okl., with him on the brief), for respondent-appellant.

Ray A. Gunning, Boulder, Colo., for petitioner-appellee.

Before SETH, Chief Judge, McWILLIAMS and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Respondent State of Oklahoma appeals from a federal district court order granting petitioner habeas corpus relief under 28 U.S.C. § 2254 (1970). Petitioner was convicted in Oklahoma courts of unlawful possession of controlled drugs and unlawful possession of controlled drugs with intent to distribute them. The district court's order was based on its conclusion that the convictions resulted in part from the admission into evidence of certain inculpatory statements which should have been excluded under the Fourth and Fourteenth Amendments.

Two issues are presented on appeal. We must first decide whether, under the standards of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067, *rehearing denied*, 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158 (1976), the district court was correct in conducting a collateral review of petitioner's Fourth Amendment claims. Only if this threshold issue is answered in the affirmative need we review the district court's decision going to the merits of petitioner's claim.

This case was born of an admittedly illegal arrest and was nurtured on evidence illegally seized in a context of abusive police conduct. On November 20, 1974, two undercover Tulsa police officers, Donald Bell and Robert Boston, drove to a private Tulsa residence at 623 East 54th Street

North to conduct a search of the premises for narcotics pursuant to a valid search warrant. Just as they arrived, an automobile backed out of the driveway and drove away from the residence. Believing the driver of the car to be petitioner, the suspect against whom evidence was being sought, the officers followed the vehicle and requested C. V. Hill, a uniformed officer in a marked car, to stop the automobile and detain the driver.

Respondent admits there was neither a warrant for petitioner's arrest at this time nor probable cause for a warrantless arrest. Hill simply was instructed to stop the car on the pretext of a traffic violation in order to identify its driver. Complying with these instructions, Hill stopped the vehicle, identified the driver as petitioner, and radioed this information to Bell and Boston. Hill testified that petitioner was not free to go between the time he was stopped and the arrival of the two narcotics officers moments later.

Officers Bell and Boston, each armed with a service revolver, approached Hill and petitioner. Hill purportedly told petitioner the two persons dressed like "hippies" were police officers. The two then conducted a thorough search of petitioner's car for weapons.

Following the search, Bell obtained a .12 gauge, short-barreled police shotgun from his car, cocked it, and ordered petitioner to get in his car. Bell then entered the passenger side of petitioner's car and ordered: "Let's drive back to your house." When petitioner started driving to his Frankfort Avenue house, Bell ordered him to drive instead to the residence at 623 East 54th Street North. Bell testified that the shotgun was on the floorboard during this seven to ten minute drive, but petitioner testified it was pointed at his mid-section during the trip.

At the residence petitioner was ordered by Bell, who was still carrying the .12 gauge shotgun, to open the door with his key. Bell testified he handed petitioner the search warrant before entering the house, while petitioner contended that Bell first

showed it to him after they were inside. Officers Boston and Hill arrived at the residence seconds later. Armed with the shotgun, Hill held petitioner in custody in the living room while Bell and Boston began searching the house. The search produced various items of evidence relating to drug dealing. Sometime during the search petitioner was formally arrested and given the *Miranda* warnings.

Petitioner was then asked if he had a key to a locked briefcase that was found during the search. Although he initially denied having access to a key, when the officers threatened to break the briefcase open, petitioner made inculpatory statements relating to the location of the key. Petitioner then produced the key and the briefcase was opened. It contained highly damaging evidence of petitioner's unlawful involvement with drugs.

Petitioner was asked whether there were any additional drugs in the house. This inquiry was accompanied with a threat that the officers would tear the house apart if he did not cooperate. Petitioner responded that "the drugs in the residence were all in . . . one particular bedroom [the part of the house he occupied] and the remainder of the house . . . was clean."

These statements and assertive conduct followed within an hour petitioner's arrest. Finding the arrest to be illegal, the state courts excluded all evidence obtained and statements made prior to the giving of the *Miranda* warnings. But the post-warning statements and evidence were admitted. Respondent strongly emphasized the post-warning evidence in its closing argument as proof of petitioner's dominion and control over the drugs, paraphernalia, and contraband found during the search.

Pending appeal to the Oklahoma Criminal Court of Appeals, the United States Supreme Court decided *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). *Brown* held that the giving of *Miranda* warnings alone is not sufficient to "attenuate the taint" of evidence poisoned by a Fourth Amendment violation. While recognizing that *Miranda* warnings are one

important attenuating factor, the Court instructed that the "temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct are all relevant." *Brown v. Illinois,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62 (footnotes omitted).

Petitioner argued the application of *Brown* to his case on direct appeal to the Oklahoma Criminal Court of Appeals. The court considered generally petitioner's claim that his conviction was based on evidence which should have been excluded, but it did not make reference to *Brown* or employ the *Brown* factors in its decision of this issue. *See Gamble v. State,* 546 P.2d 1336, 1341 (Okl.Cr.1976). Petitioner then filed an application for post-conviction relief on the ground that *Brown* controlled this issue. The state trial court denied his application, again without even nominal mention or implicit incorporation of *Brown* principles. It held instead that "the argument of [petitioner] is without merit in that since miranda [sic] warnings were given statements could be used against the defendant." Record, vol. 1, at 58. This is exactly the same rationale which was used by the Illinois Supreme Court in *Brown* but flatly condemned by the United States Supreme Court. Despite this weakness, the Oklahoma Criminal Court of Appeals affirmed the trial court in a one page memorandum order.

*Application of Stone v. Powell*

Under *Stone v. Powell,* "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494, 96 S.Ct. at 3052 (footnotes omitted). Petitioner's constitutional claims, although relating to evidence arguably protected also by the Fifth Amendment, were based on Fourth Amendment considerations articulated in *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct.

407, 9 L.Ed.2d 441 (1963), and *Brown v. Illinois,* 422 U.S. at 590, 95 S.Ct. 2254.[1] Therefore, the threshold issue both in the district court and on this appeal is whether petitioner was afforded an "opportunity for full and fair litigation" within the meaning of *Stone.* On this issue the district court held:

> Based upon [the] lack of consideration by the Oklahoma State courts of petitioner's arguments in reliance upon a United States Supreme Court case almost directly on point, this Court finds that any opportunities which the State of Oklahoma might have provided to petitioner to litigate this Fourth Amendment claim were not "fair."

Record, vol. 1, at 59. Consequently, the court concluded that it was not precluded from considering petitioner's claims on the merits. We agree.

Although *Stone* announced a verbal standard, it failed to clothe the words "opportunity for full and fair litigation" with any precise meaning. The only hint of meaning is a single, oblique footnote signaling the reader to consult *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). *Townsend* describes when a federal court in a habeas corpus proceeding must hold an evidentiary hearing before conducting a collateral review of a state court's application of law to facts. The case instructs that, when the facts are in dispute, a separate federal evidentiary hearing is required "if the habeas applicant did not receive a full and fair evidentiary hearing in a state court." *Id.* at 313, 83 S.Ct. at 757.

In the case before us the district court applied the *Townsend* test to determine whether a full evidentiary hearing was required. It concluded "that the facts underlying petitioner's propositions were adequately developed during the trial process and that consideration of the propositions [required] the Court merely to draw legal

conclusions from these facts." Record, vol. 1, at 51. In other words, the court found that there had been a full and fair evidentiary hearing. But the "full and fair evidentiary hearing" of *Townsend* is not necessarily coextensive with the "opportunity for full and fair litigation" of *Stone.*

■ An increasing number of circuits, including this one, believe that *Townsend* should not be applied literally as the "sole measure" of "opportunity for full and fair litigation." *Johnson v. Meacham,* 570 F.2d 918 (10th Cir. 1978) (per curiam); *Mack v. Cupp,* 564 F.2d 898, 900–01 (9th Cir. 1977); *Graves v. Estelle,* 556 F.2d 743, 746 (5th Cir. 1977); *O'Berry v. Wainwright,* 546 F.2d 1204, 1211–12 (5th Cir.), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2981, 53 L.Ed.2d 1096 (1977); *see United States ex rel. Petillo v. New Jersey,* 562 F.2d 903, 906–07 (3d Cir. 1977). In *Mack v. Cupp,* 564 F.2d at 900–01, for example, the court reasoned that

> the *Townsend* guidelines, to the extent that they command the actual use of state fact-finding procedures, surpass the requirement of *Stone* that the state must have extended an *opportunity* for the full and fair consideration of fourth amendment claims. *See Pulver v. Cunningham,* 419 F.Supp. 1221, 1223–24 (S.D.N.Y.1976). On the other hand, the opportunity to litigate is broader than the evidentiary hearing with which *Townsend* was concerned. For instance, it extends to appellate review and other matters unrelated to the need for a state court hearing.

(Emphasis in original). We agree that *Townsend* is not the sole measure of the meaning of "opportunity for full and fair litigation."

Other courts have focused on the "opportunity" aspect of the *Stone* standard. In general, issues concerning the "opportunity" element of the standard involve procedural questions, that is, whether state trial

---

1. *Wong Sun* declared that "verbal evidence which derives so immediately from [a Fourth Amendment violation] is no less the 'fruit' of official illegality than the more common tangible fruits." 371 U.S. at 485, 83 S.Ct. at 416. Although *Wong Sun* acknowledged that the primary taint of such verbal or nonverbal evidence could be purged, *id.* at 486, 83 S.Ct. 407, *Brown* instructed courts to consider more than the routine giving of *Miranda* warnings in deciding whether the taint had been sufficiently attenuated. 422 U.S. at 602–04, 95 S.Ct. 2254.

and review procedures afforded defendant an opportunity to raise or litigate his claim, or whether a failure to raise such claim at some stage of trial or failure to make timely objection constitutes a waiver or exercise of opportunity and thus satisfies the requirement of "*opportunity* for full and fair litigation." *See, e. g., Gates v. Henderson,* 568 F.2d 830 (2d Cir. 1977) (en banc), 32 *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978); *Tisnado v. United States,* 547 F.2d 452 (9th Cir. 1976). Our prior decisions applying *Stone* are based primarily on this procedural "opportunity" aspect of the *Stone* standard. *E. g., McDaniel v. Oklahoma,* 582 F.2d 1242 (10th Cir. 1978); *Johnson v. Meacham,* 570 F.2d at 920; *Sandoval v. Aaron,* 562 F.2d 13, 14 (10th Cir. 1977) (per curiam); *Redford v. Smith,* 543 F.2d 726, 731 (10th Cir. 1976).

■ "Opportunity for full and fair consideration"[2] includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also includes the full and fair evidentiary hearing contemplated by *Townsend.* Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards. Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards. Deference to state court consideration of Fourth Amendment claims does not require federal blindness to a state court's wilful refusal to apply the appropriate constitutional standard.[3]

In the case before us, it is manifestly evident that the state courts did not recognize or apply the controlling *Brown* standards. *Brown* was not referred to expressly by name, nor were its factors implicitly incorporated into any state court opinion. Not only were the *Brown* factors not applied, but the very standard *Brown* rejected, namely, that *Miranda* warnings alone purge the taint, formed the basis of the state court decisions.

■ The most significant indication that *Brown* was not applied is the fact that the post-*Miranda* warning statements and evidence actually were admitted. Even when doubts as to the application of *Brown* factors to the facts of this case are resolved in the state's favor, it is transparent that the primary taint of the challenged evidence was not purged. The search and seizure of petitioner's statements and the other evidence followed the admittedly illegal arrest by less than an hour. There were no intervening circumstances or breaks in the causal chain between the arrest and the illegal search and seizure. Although the valid search warrant might have purged evidence found in the general search of the premises of its primary taint, the warrant did not authorize the arrest, search, or seizure of petitioner's person. Consequently, the warrant could not have purged of primary taint the statements and other evidence obtained as a result of petitioner's coerced presence at the residence.

It should also be stressed that the police conduct throughout the episode in question was egregious, constituting the sort of flagrant misconduct relevant under the *Brown* standard. Petitioner's initial detention was purely a subterfuge to force his return to the residence. The officers engaged in this artifice in order to simplify the burden of proving petitioner's possession and control of any contraband that might be found during the search. Once the petitioner was

2. Although the court announced its holding in terms of "full and fair litigation," 428 U.S. at 494, 96 S.Ct. 3037, its opinion repeatedly spoke of "full and fair consideration," *id.* at 486, 489, 96 S.Ct. 3037, 3050. The Court's use of the words "consideration" and "litigation interchangeably" suggests that in some instances more than procedural opportunity to raise and litigate a Fourth Amendment claim is required. Indeed, consideration connotes the actual evaluation of a claim under the correct constitutional standard.

3. Although it is not presented by this case, we also can foresee the possibility that the correct federal standard could be applied, but in a manner so unconscionable as to deny a defendant the opportunity for full and *fair* litigation. *See Gates v. Henderson,* 568 F.2d at 840.

**1166**

in custody, the officers kept him constantly under the barrel of a .12 gauge shotgun, even though petitioner had already been searched for weapons. The *Miranda* warnings were themselves delivered under coercive conditions featuring the presence of the shotgun and the articulation of threats to tear apart the house being searched. In view of such outrageous misconduct, it is inconceivable that the state courts could have applied the *Brown* standard and reached the conclusion they did. We therefore uphold the district court's decision that federal consideration of petitioner's Fourth Amendment claim is not barred by *Stone*.

We have already indicated our evaluation of the merits of petitioner's case. An application of *Brown* requires the exclusion of the statements and other evidence tainted by petitioner's unlawful arrest. Under these facts, the taint was not subsequently purged by the existence of a valid warrant or by the mere giving of *Miranda* warnings.

Respondent concedes that petitioner's state court convictions were based on this excluded evidence. We therefore affirm the district court order directing respondent to release petitioner from state custody if he is not afforded a new trial within 90 days from the date of this decision.

McKay, Circuit Judge, filed dissenting opinion.