24 F.3d 248
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Timothy Jon ROBLES, Petitioner-Appellant,
v.
STATE OF NEVADA, Respondent-Appellee.
 No. 93-35037.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 2, 1994.
Decided May 16, 1994.
 
 Before: ALARCON, NORRIS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Timothy Robles appeals from the denial of his petition for habeas corpus, pursuant to 28 U.S.C. Sec. 2253. Robles contends that the search warrant issued by the state court was invalid because it was not supported by probable cause. He also argues that the state court made evidentiary rulings that deprived him of his right to due process and violated his privilege against self incrimination. We affirm the denial of habeas relief because review of Robles' Fourth Amendment claim is precluded by Stone v. Powell, 428 U.S. 465 (1976). We also conclude that Robles' remaining contentions lack merit.
 
 
 3
 I. Robles' Fourth Amendment claim was fully and fairly litigated in the state court and thus may not form the basis of federal habeas corpus relief under Stone v. Powell, 428 U.S. 465 (1976).
 
 
 4
 Citing Illinois v. Gates, 462 U.S. 213 (1983), Robles first contends that the oral affidavit given by Agent Davis did not contain enough information and the " 'totality of the circumstances' as contained in the warrant do not justify a finding of probable cause." Robles argues that the affidavit "did not establish probable cause and the search warrant and all fruits therefrom should have been suppressed."
 
 
 5
 Nevada responds that this Fourth Amendment claim was fully and fairly litigated in state court, and therefore may not be raised on federal habeas corpus under Stone v. Powell, 428 U.S. 465 (1976). In Stone, the Supreme Court held that
 
 
 6
 where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.
 
 
 7
 Id. at 482.
 
 
 8
 Robles counters that Stone does not apply in this case. He contends that the state court did not apply the correct legal standard to his claim, and therefore it could not have been fully and fairly litigated. In support of this argument, Robles cites Dortch v. O'Leary, 863 F.2d 1337, 1341-42 (7th Cir.1988), cert. denied, 490 U.S. 1049 (1989), which cites and discusses Gamble v. Oklahoma, 583 F.2d 1161 (10th Cir.1978).
 
 
 9
 In Gamble, the Tenth Circuit held that Stone did not bar federal habeas consideration of the petitioner's Fourth Amendment claim because the state court exhibited a "wilful refusal to apply the appropriate constitutional standard." Gamble, 583 F.2d at 1165. The state court had not only ignored controlling Supreme Court precedent, but had applied a legal standard expressly rejected by the Court. Id. Under those circumstances, it could not be said that the petitioner was given an opportunity for full and fair consideration of his Fourth Amendment claim. Id.
 
 
 10
 In support of his position that he was similarly denied an opportunity for full and fair litigation regarding his claim, Robles refers us to the first two pages of the state court's order issued February 19, 1987 rejecting Robles' challenge to the validity of the search warrant and denying his motion to suppress the evidence seized pursuant thereto. Robles states that "[i]t is impossible to tell what legal standard the state court applied because of its lack of citation. Because it cannot be said that the state judge applied the correct legal standard, it also cannot be said whether [my] claim was fully and fairly litigated."
 
 
 11
 Robles' argument fails for two reasons. First, the fact that the state judge's rationale for denying Robles' motion to suppress is arguably sketchy does not, ipso facto, prove that the judge "wilfully refuse[d] to apply the correct and controlling constitutional standards." Gamble, 583 F.2d at 1165.
 
 
 12
 Second, proceedings subsequent to the February 19, 1987 order demonstrate that Robles' Fourth Amendment claim was fully and fairly litigated under the correct legal standard. On March 3, 1987, Robles filed a motion for reconsideration of the state court's denial of his motion to suppress. In his supplemental memorandum of points and authorities in support of his motion for reconsideration, Robles challenged, as he does in this appeal, the sufficiency of the information contained in Agent Davis' oral affidavit. In its order dated June 1, 1991, the state court rejected Robles' arguments. In doing so, the court extensively discussed Illinois v. Gates, 462 U.S. 213 (1983), and applied its "totality of the circumstances" standard to test the sufficiency of Agent Davis' affidavit underlying the search warrant. This is the very standard Robles urges us to apply.
 
 
 13
 Robles was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state court. Robles has failed to demonstrate that the state court applied the wrong legal standard in its ruling. Stone bars Robles from litigating this issue in a federal habeas corpus proceeding. We therefore decline to address the merits of this contention.
 
 
 14
 II. The admission of testimony regarding Robles' prior cooperation with the DEA did not deprive Robles of his right to due process because it did not render his trial fundamentally unfair.
 
 
 15
 Robles contends he was denied due process "by the repeated and intentional presentation to the jury of inadmissible prejudicial information about his past." Robles complains that the state trial court erred when it did not grant a mistrial after evidence regarding his prior cooperation with DEA authorities was admitted.
 
 
 16
 To warrant federal habeas corpus relief, the admission of the evidence must have rendered Robles' trial fundamentally unfair. Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.), cert. denied, 479 U.S. 839 (1986); Batchelor v. Cupp, 693 F.2d 859, 865 (9th Cir.1982) ("Habeas corpus relief for an asserted due process violation is available only where the state court's action is arbitrary or fundamentally unfair."), cert. denied, 463 U.S. 1212 (1983). The record does not support such a finding.
 
 
 17
 The testimonial transgressions cited by Robles were not significant violations of the court's ruling on the motion in limine. None of the testimony specifically referred to the details of a large-scale drug bust made in Peru. In denying the motion for a mistrial, the trial court noted that the jury had heard a lot of information about Robles' prior drug trafficking, noting that "almost every witness up here has made some allusion to it." The admission of the challenged testimony did not render Robles' trial fundamentally unfair. The jury was clearly instructed that it was not to consider the information for purposes other than the manner in which it reflected upon the issues of identification and voluntariness. See Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990) (the fact that a jury is instructed as to the limited manner in which it may consider contested evidence is a factor cutting against a finding that the defendant's right to due process has been violated). Finally, the fact that Robles was only convicted of two of the four charges against him suggests that the jury was not unduly influenced by the testimony to which Robles takes exception. Accordingly, we reject Robles' contention that his right to due process was violated.
 
 
 18
 III. Robles' privilege against self incrimination was not violated when one of the statements he made at the time of his arrest was admitted at trial because Robles had not requested counsel and the statement was not coerced.
 
 
 19
 Robles contends that his rights under the Fifth Amendment and Miranda v. Arizona, 384 U.S. 436 (1966) were violated by the admission of statements he made at the time of his arrest. Preliminarily, we note that Robles failed to cite the portion of the trial transcript wherein these statements were allegedly introduced. The only instance where Robles identifies such a statement is in his petition for habeas corpus filed in the district court, in which he complains that "a statement of [his] regarding his ability to secure additional narcotics for the officers [was] permitted before the jury." The Government concedes that this statement was admitted. Thus, we consider only the propriety of the admission of this statement. Robles argues that it was error to admit this statement because he was interrogated in spite of his request for counsel. He also asserts that his response was coerced.
 
 
 20
 Robles divides his Fifth Amendment claim in two parts:
 
 
 21
 First, when Agent Davis began to question [me] in the motel room, [I] twice invoked [my] right to counsel. This invocation required that Agent Davis and all other law enforcement officers stop questioning [me] until after counsel had been appointed. The first issue, then, is whether [I] invoked a right to counsel.
 
 
 22
 The second issue is whether, regardless of [my] invocation of [my] rights, [my] statements were nonetheless coerced.
 
 
 23
 With regard to the first issue, the trial court found that "Robles did not request an attorney at the time of his arrest." The state court found that the agents' testimony on this issue was credible.
 
 
 24
 Under 28 U.S.C. Sec. 2254(d), the state court's factual finding that Robles did not request an attorney is entitled to a presumption of correctness in this court. Nevertheless, citing 28 U.S.C. Sec. 2254(d)(2), (3), (6), and (8), Robles argues that this presumption is rebuttable because: (1) the state trial court's determination that the officers were credible witnesses is not fairly supported by the record; (2) the factfinding process employed by the state court was inadequate; (3) material facts were not adequately developed at the state court hearing; and (4) he did not receive a full, fair, and adequate hearing in the state court. Robles contends that the record demonstrates that the officers were not trustworthy because at trial they "repeatedly violated the court's instruction that they not mention details of [Robles' prior] cooperation [with DEA authorities]." According to Robles:
 
 
 25
 [The agents] were deliberately trying to undermine [my] right to a fair trial. Had the court been aware of this attitude on their part, or had the court recognized their willingness to undermine the rules, the court might well had thought less of their credibility in deciding who to believe in the pretrial hearing.
 
 
 26
 Robles concludes that since his claim "relies on facts outside the record of the [s]tate court when it conducted the ... hearing," the credibility findings of the state trial court are not entitled to a presumption of correctness.
 
 
 27
 The cases cited by Robles do not support his argument. For example, in Ford v. Wainwright, 477 U.S. 399 (1986), the Supreme Court did not conclude that the state court's factual findings had been rebutted. Rather, the Court stated that capital cases require factfinding procedures which "aspire to a heightened standard of reliability." Id. at 411. The Court held that because the state court had not considered the post-trial deterioration of the petitioner's mental health, there were no findings on that issue entitled to the presumption of correctness. Id. at 410-11.
 
 
 28
 The facts in this record are similar to those in Aiken v. Blodgett, 921 F.2d 214 (9th Cir.1990), cert. denied, 112 S.Ct. 125 (1991). In Aiken, a state habeas petitioner sought to challenge the trial court's factual finding that police officers did not hear his requests for counsel. Id. at 216-17. He proposed to do this by means of an affidavit from a speech pathologist stating that his requests for counsel "were the same decibel level as his other responses to the officers' questions." Id. at 215. We rejected the petitioner's attempt, noting that the new evidence could only show that the officers might have heard petitioner, not that they did. Id. at 217. Moreover, we stated that the petitioner was merely trying to "challenge ... the credibility of the officers' testimony." Id. We concluded that "[s]ection 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court." Id. (internal quotation and citation omitted).
 
 
 29
 Likewise, the evidence that the agents disobeyed the trial court's order to limit their description of Robles' prior cooperation with the DEA does not demonstrate that the agents lied during the suppression hearing regarding whether Robles requested counsel. Furthermore, Robles' claim challenges the credibility of the agents who testified during his trial. As this court noted in Aiken, we will not second guess a state court's credibility determination. Robles has not overcome the presumption that the state court correctly determined that he did not request counsel.
 
 
 30
 Robles also challenges the state court's finding that the statements he made at the time of his arrest were not coerced. We review de novo the question whether Robles' statements were voluntary. Aiken, 921 F.2d at 217. The factual findings underlying the state court's determination that Robles was not coerced, however, are entitled to a presumption of correctness. Id.[1]
 
 
 31
 Robles presented several contentions in support of his claim that his statements at the time of his arrest were coerced and therefore inadmissible at trial: (1) the officers yelled at him and pointed guns at Motter's head; (2) the arresting officers separated him from Motter while they were being detained at the hotel; (3) the officers ignored his request for an attorney; and (4) the officers conducted a strip search and took photographs of him while he was nude.
 
 
 32
 With respect to these contentions, the state trial court made the following findings. First, the defendants were separated from each other after the arrest and were yelled at during the arrest, but these actions were not improper. The court stated:
 
 
 33
 [T]he actions in this regard were proper and reasonable and an exercise of good police practice on the part of the officers. By isolating the defendants from one another, each defendant was allowed to talk to the officers and were given the opportunity to agree to act as confidential informants while outside of the presence of the other defendants. Furthermore, it was reasonable for the officers to speak with raised voices when they entered the room since they needed to have their authority clearly understood and to remain in control of the situation so as to forestall violence.
 
 
 34
 Next, the trial court found that Robles did not request an attorney at the time he was arrested. Finally, the court stated that, in its opinion, "the strip search and the resulting photographs of ... Robles while he was in the nude were improper." However, the court found that the reason Robles made statements to the officers was to "once again become an informant and secure the advantages of cooperation with the police." The court did not make an express finding concerning whether the officers pointed their guns at Motter.
 
 
 35
 In order to assess the voluntariness of a statement, we review the state court's factual findings and the record to determine whether, under the totality of the circumstances, the statement was coerced. Haynes v. Washington, 373 U.S. 503, 514 (1963). For example, in applying this test in Mincey v. Arizona, 437 U.S. 385, 398 (1978), the Supreme Court held that a suspect's statements were inadmissible because they were the result of "virtually continuous questioning of a seriously and painfully wounded man" lying in a hospital bed "on the edge of consciousness." Id. at 401-02.
 
 
 36
 In this case, the agents testified that Robles was cooperative. Robles assisted one of the officers in the use of a camera to photograph evidence. Robles had served as a confidential informant for the DEA in the past. He told the arresting officers that he was in trouble and wished to assist the DEA again. Under the totality of the circumstances, we conclude that Robles' statement that he could obtain narcotics was not as the result of coercive police pressures.
 
 
 37
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Robles presents the same argument with regard to this presumption as outlined above. Robles contends that the trial court's finding that his statements were not coerced depended largely upon a determination that the testimony given by the agents during the suppression hearing was credible, and that this credibility was cast into doubt by their behavior during trial. For the reasons stated above, this argument is not persuasive and we apply the presumption of correctness