**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 6, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RONALD E. HARDING, JR.,

    Petitioner - Appellant,

v.

TRACY McCOLLUM, Warden,

    Respondent - Appellee.

No. 13-5154
(D.C. No. 4:10-CV-00679-GKF-PJC)
(N.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **HARTZ**, **McKAY**, and **MATHESON,** Circuit Judges.

Ronald Harding, an Oklahoma state prisoner proceeding pro se,[1] seeks a certificate

of appealability ("COA") to appeal the district court's denial of his 28 U.S.C. § 2254

petition for a writ of habeas corpus. *See* 28 U.S.C. § 2253(c)(1)(A) (requiring a COA to

appeal "the final order in a habeas corpus proceeding in which the detention complained

---

[*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Mr. Harding is proceeding pro se, we construe his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[W]e must construe [a pro se litigant's] arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

of arises out of process issued by a State court"). We deny his request for a COA and dismiss this matter.

## I. BACKGROUND

### A. *Factual Background*

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Oklahoma state courts' factual determinations in this case "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Mr. Harding asserts the state courts clearly erred in making several factual findings regarding his consent to search. After careful review of the record, however, we conclude he has not satisfied his "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* We therefore recite the facts as summarized by the OCCA:

> On September 25, 2007, two Tulsa County drug task force officers went to Harding's Tulsa home around 8:30 a.m. to execute an arrest warrant for David Gilliam for a drug crime. Deputy Ramsey knocked on the door, and Leon Alford, Harding's cousin and roommate, answered. Ramsey's partner, Officer Rhames, joined him to talk with Alford after making certain that no one was trying to escape. Alford told the officers that Gilliam had left the night before and was not there. Deputy Ramsey asked Alford if they could check inside the home for Gilliam, and Alford consented. The officers did not find Gilliam but found a 17-year-old girl named Star Cates hiding in one of the bedrooms. A records check revealed that she had an outstanding warrant. The officers met Harding coming out of the bathroom.
>
> The officers saw in plain view a large amount of cash on the coffee table, prompting them to ask Harding for permission to search his home. Harding replied "I have nothing to hide, go ahead and look." The officers handcuffed the three occupants for safety reasons before searching. Ramsey testified that he went into the southeast bedroom, opened a coffee can, and found money and hundreds of small plastic baggies that he

associated with the distribution of drugs. It was then that Harding told Ramsey that he did not want him to search anymore and Ramsey stopped searching. Ramsey read Harding his rights and Harding told Ramsey that he understood them. Ramsey then informed Harding that he was going to get a search warrant and asked if he had "any more drugs in the house." Harding volunteered that he had some for personal use and showed Ramsey a small tray under a table in a bedroom with rocks of crack cocaine on it. Ramsey arrested Harding.

Officer Rhames testified that he watched Alford, Cates, and Harding in the living room while Ramsey was searching. At some point, Harding, who was wearing only shorts, asked Rhames to get his work jeans on his hamper in the bedroom. Rhames complied with the request. Harding then asked for his work shirt on the same hamper. When Rhames picked up the shirt a plastic bag containing 24.78 grams of crack cocaine fell onto the floor. Rhames returned and asked Harding if that was the shirt he wanted. Harding replied, "Yeah I just wanted to get it over with."

ROA, Vol. I at 74-76.

## B. *Procedural Background*

### 1. State Proceedings

On October 1, 2007, Mr. Harding was charged with (1) Trafficking in Illegal Drugs (cocaine base) after two or more previous convictions, in violation of Okla. Stat. tit. 63, § 2-415 (2001), and (2) Possession of Drug Paraphernalia in violation of Okla. Stat. tit. 63, § 2-405 (2001). On October 26, 2007, Mr. Harding moved to suppress the drug evidence as the fruit of an unlawful search and seizure and to dismiss the case, arguing that he never consented to the search. At a preliminary hearing conducted later that day, the state court heard officer testimony concerning the search and overruled defense counsel's chain-of-custody demurrer without explicitly ruling on his motion to suppress. Mr. Harding moved to suppress on two additional occasions before trial,

December 18, 2007, and May 19, 2008. The state trial court deferred its evidentiary hearing until trial, which began on May 20, 2008.

At trial, the State introduced (over Mr. Harding's objection) the drug and money evidence seized during the search of Mr. Harding's home. Officers Ramsey and Rhames testified that Mr. Alford allowed their initial entry, Mr. Harding consented at each stage of the subsequent search, and their search was otherwise limited to items in plain view.

Mr. Harding, by contrast, elicited testimony from Mr. Alford and his sister, Farmina Williams, who was on the phone with Mr. Harding during the beginning of the search and overheard part of the encounter. Their testimony conflicted with the officers' accounts—particularly with respect to whether Mr. Harding consented to search. After their testimony, Mr. Harding renewed his suppression motion along with a motion for directed verdict. Although defense counsel acknowledged "[t]here is a conflict somewhat as to the facts of this search," ROA, Vol. I at 93, he argued the undisputed facts showed the officers searched Mr. Harding's home "with no probable cause, no search warrant, acting with intimidation, and under this evidence without permission, and therefore all of [the] State's Exhibits 1, 2, and 3 should be suppressed and this case dismissed," *id.* at 94.

The state trial court denied Mr. Harding's motion based on its assessment of witness credibility:

> The testimony of the witnesses, Mr. Alford and Mrs. Williams, is in conflict with what the police officers said. And after examining their testimony and the circumstances of their testimony, I choose not to accept their account of what happened. And have—as I did before, when that was the only evidence that we had, was that there was consent to search initially

-4-

by Mr. Alford and then a consent, a general consent by Mr. Harding. Further, that when that was going on, the drugs in question here were ones that really weren't found as a result of a search. They were found as a result of at least from the testimony of Mr. Harding asked to be given clothing and when he did that, that's when that particular set of drugs was found.

ROA, Vol. I at 94-95.

On May 20, 2008, the jury convicted Mr. Harding on both charges. He received a life sentence without parole and a $50,000 fine on the first count, and a $500 fine on the second count.

Mr. Harding timely appealed to the Oklahoma Court of Criminal Appeals (the "OCCA"), arguing that the officers' initial entry into his home, subsequent search, and seizures violated the Fourth Amendment.

On October 20, 2009, the OCCA affirmed Mr. Harding's conviction. *See* ROA, Vol. I at 74. Citing *Georgia v. Randolph*, 547 U.S. 103, 106 (2006), the OCCA first concluded the officers' initial entry was reasonable under the Fourth Amendment because Mr. Alford, who shared authority over the premises with Mr. Harding, consented to the initial search. *See* ROA, Vol. I at 77-78. The OCCA next determined the search of Mr. Harding's bedroom—which discovered the coffee can filled with money and plastic baggies—was reasonable under *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), because Mr. Harding consented when he said "I have nothing to hide, go ahead and look," ROA, Vol. I at 78.

When Mr. Harding revoked his consent to search, the OCCA observed, Officer

Ramsey stopped searching and read Mr. Harding his *Miranda* rights. After acknowledging these rights, Mr. Harding showed Officer Ramsey a tray containing crack cocaine. Accordingly, the OCCA concluded these "drugs were not discovered as a result of a search but because [Mr.] Harding confessed and led [Officer] Ramsey to the drugs." *Id.* at 79.

Finally, the OCCA determined the bag of crack cocaine that fell out of Mr. Harding's shirt was not seized in violation of the Fourth Amendment because Mr. Harding "specifically asked Officer Rhames" for that shirt and the bag fell to the floor when Officer Rhames picked up the shirt. *Id.* Once the plastic bag containing "a white crystalline powder consistent with drugs" was in plain view, the OCCA reasoned, Officer Rhames had probable cause to seize it. *Id.*; *see also Gomez v. State*, 168 P.3d 1139, 1143 (Okla. Ct. Crim. App. 2007). Accordingly, the OCCA concluded, none of the evidence admitted against Mr. Harding was obtained in violation of his Fourth Amendment rights.[2]

2. **Federal Proceedings**

On November 29, 2010, Mr. Harding timely filed a writ of habeas corpus under 28 U.S.C. § 2254, alleging the state courts erred in denying his motions to suppress. The State responded that Mr. Harding's petition was barred under *Stone v. Powell*, 428 U.S. 465 (1976), which prohibits federal courts from considering Fourth Amendment claims in habeas proceedings if "the State has provided an opportunity for full and fair litigation"

---

[2] Mr. Harding did not seek certiorari from the United States Supreme Court.

-6-

of those claims. *Id.* at 482.

On December 17, 2013, the federal district court denied relief under *Stone*. The district court concluded Mr. Harding had a "full and fair opportunity" to litigate his Fourth Amendment claims in state court for several reasons. ROA, Vol. I at 108. First, Mr. Harding filed three pretrial suppression motions and, after a preliminary hearing on the first motion, the state trial court overruled Mr. Harding's demurrer. Second, when Mr. Harding objected to the introduction of evidence during the officers' testimony and renewed his motion to suppress, the state trial court overruled his objection "on all counts." *Id.* at 109. Third, at the close of evidence, Mr. Harding renewed his motion to suppress, and the state trial court again rejected his claim, explaining it credited the officers' testimony that Mr. Harding consented to search and the other evidence was found in plain view. Finally, Mr. Harding raised his Fourth Amendment claims on direct appeal, and the OCCA affirmed.

Accordingly, the district court denied Mr. Harding's petition for habeas relief. It also refused to grant a COA. *See* 28 U.S.C. § 2253(c)(1)(A). The district court did, however, grant Mr. Harding's motion to proceed *in forma pauperis* ("*ifp*") on appeal. Mr. Harding now requests a COA and relief on the merits.

## II. **DISCUSSION**

On appeal, Mr. Harding argues he was denied a full and fair opportunity to litigate his Fourth Amendment claim. He asserts he never consented to the warrantless search and the evidence against him should have been suppressed.

A. *Jurisdiction and Standard of Review*

A COA is a jurisdictional prerequisite to this court's review of a § 2254 petition. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). To receive a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because the district court denied Mr. Harding's habeas petition on procedural grounds "without reaching the prisoner's underlying constitutional claim," a COA cannot issue unless Mr. Harding shows both (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *accord Dulworth v. Jones*, 496 F.3d 1133, 1137 (10th Cir. 2007). Because we may "resolve the issue whose answer is more apparent from the record and arguments," *Slack*, 529 U.S. at 485, we start and end our discussion with the second ground concerning the district court's procedural ruling.

B. *Applicable Law*

As noted above, the district court concluded Mr. Harding's Fourth Amendment claims were barred from federal habeas review under *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at

his trial." *Id.* at 494. The opportunity for full and fair litigation "includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim," a "full and fair evidentiary hearing," and "recognition and at least colorable application of the correct Fourth Amendment constitutional standards." *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978); *accord United States v. Lee Vang Lor*, 706 F.3d 1252, 1258 (10th Cir. 2013).

## C. *Analysis*

Mr. Harding argues the state courts deprived him of a full and fair opportunity to litigate his Fourth Amendment claim for two reasons. First, Mr. Harding contends he received only "one opportunity" to litigate his claim "subject to various procedural deficiencies, including disinterested ineffective counsel, over zealous [sic] officers, and prosecutorial entities and rubber stamp judges."[3] Aplt. Br. at 28. Second, Mr. Harding asserts the state courts "did not apply the correct Supreme Court cases and the correct Constitutional Standards set forth in *Brown* [*v. Illinois*, 422 U.S. 590 (1975)] and *Wong Sun* [*v. United States*, 371 U.S. 471 (1963)]." Aplt. Br. at 28; *see also Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (1978) (holding petitioner did not receive full and fair opportunity to litigate his Fourth Amendment claim because in denying relief, the state court ignored *Brown*'s holding that giving *Miranda* warnings does not dispel the taint of a preexisting Fourth Amendment violation).

_____

[3] Despite this assertion, Mr. Harding did not press an ineffective assistance claim in the district court, nor does he raise one now on appeal.

We disagree and deny COA because reasonable jurists would not debate the district court's procedural ruling.

First, Mr. Harding had adequate procedural opportunity to present his Fourth Amendment claims and received a full and fair evidentiary hearing at the preliminary and trial suppression hearings. Mr. Harding moved to suppress on three separate occasions, and the state trial court heard testimony concerning the search during both the preliminary hearing and the trial suppression hearing. After considering defense counsel's arguments and witness testimony, the trial court denied Mr. Harding's renewed motion to suppress because it found the officers' testimony—which established that Mr. Harding consented to all of the searches—more credible than the testimony offered by Mr. Harding's witnesses. Mr. Harding's counsel "adequately apprised the court of the factual basis" for Mr. Harding's Fourth Amendment claim, *Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999), but the court chose to credit a different version of the facts. What is more, Mr. Harding's "appellate counsel presented the issue to the OCCA on direct appeal," which "thoughtfully considered the facts underlying [Mr. Harding's] Fourth Amendment claim and rejected the claim on its merits." *Id.*

Second, the state courts engaged in "at least [a] colorable application of the correct Fourth Amendment constitutional standards." *Gamble*, 583 F.2d at 1165. Because the state trial court credited the officers' accounts that Mr. Harding's roommate consented to the initial search and Mr. Harding consented to the remaining portions of the search that led to the discovery of the incriminating evidence, the court appropriately concluded

-10-

there was no Fourth Amendment violation. *See Bustamonte*, 412 U.S. at 222 ("[A] search authorized by consent is wholly valid."). The court therefore had no need to consider *Brown* and *Wong Sun*, which are relevant to dispelling the taint of a Fourth Amendment violation only if a Fourth Amendment violation occurs in the first place. *See Brown*, 422 U.S. at 603 ("*Miranda* warnings, alone and per se, cannot always make the act sufficiently a product of free will [to] break, for Fourth Amendment purposes, the causal connection between the *illegality* and the confession." (emphasis added)); *Wong Sun*, 371 U.S. at 488 ("[T]he more apt question in such a case is whether, granting establishment of the *primary illegality*, the evidence to which instant objection is made has been come at by *exploitation of that illegality* or instead by means sufficiently distinguishable to be purged of the primary taint." (emphasis added) (quotations omitted)); *see also Gamble*, 583 F.2d at 1165 (state court's failure to consider *Brown* deprived petitioner of a full and fair opportunity to litigate his Fourth Amendment claim where the "search and seizure of petitioner's statements and the other evidence followed the *admittedly illegal arrest* by less than an hour" (emphasis added)).

The OCCA's analysis on appeal likewise displayed "recognition and at least colorable application of the correct Fourth Amendment constitutional standards." *Gamble*, 583 F.2d at 1165. After concluding that the state trial court's credibility determinations were supported by substantial evidence and not clearly erroneous, the OCCA applied prevailing Supreme Court law on consensual searches and the plain view doctrine to conclude Mr. Harding's Fourth Amendment rights were not violated. *See*

-11-

*Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (authority to consent); *Bustamonte*, 412 U.S. at 219 (consent); *Gomez v. State*, 168 P.3d 1139, 1143 (Okla. Ct. Crim. App. 2007) (citing *Harris v. United States*, 390 U.S. 234, 236 (1968), to support seizure of "drug-related items" found "in plain view during a valid warrantless search"). Because the OCCA agreed with the state trial court that no Fourth Amendment violation occurred, it also had no reason to consider *Brown* or *Wong Sun*.

Given the multiple motions to suppress, the testimony adduced during the preliminary hearing and at trial, and the state courts' recognition and colorable application of prevailing Fourth Amendment law, we conclude reasonable jurists would not debate the district court's conclusion that Mr. Harding had a "full and fair opportunity" to litigate his Fourth Amendment claim in Oklahoma state court.

## III. CONCLUSION

Mr. Harding has failed to demonstrate that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling" that his § 2254 motion is precluded by *Stone*. *Slack*, 529 U.S. at 484. We therefore deny Mr. Harding's application for a COA and dismiss this matter.

ENTERED FOR THE COURT

Scott M. Matheson, Jr.
Circuit Judge

-12-