**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHAEL D. WALKER,

Petitioner - Appellant,

v.

DAN SCHNURR, Interim Warden, El
Dorado Correctional Facility[*]; DEREK
SCHMIDT, Attorney General of the State
of Kansas,

Respondents - Appellees.

No. 17-3151
(D.C. No. 5:15-CV-03230-DDC)
(D. Kansas)

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY[**]**

Before **PHILLIPS**, **McKAY,** and **McHUGH**, Circuit Judges.

Michael D. Walker, a Kansas inmate appearing pro se,[1] seeks a certificate of

appealability ("COA") to challenge the district court's dismissal of his petition for writ of

habeas corpus under 28 U.S.C. § 2254. We deny a COA and dismiss this matter.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Warden James Heimgartner is replaced by
Dan Schnurr, Interim Warden, El Dorado Correctional Facility.

[**] This order is not binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Federal Rule Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

[1] Because Mr. Walker is pro se, "we liberally construe his filings, but we will not
act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## I.   BACKGROUND

Mr. Walker is serving a life sentence, having been convicted of first-degree felony murder and criminal discharge of a firearm at an occupied dwelling. *State v. Walker*, 153 P.3d 1257, 1263 (Kan. 2007). His convictions and sentence arose from a gang-related drive-by shooting. *Id.* In brief, evidence presented at trial established that gunshots emanating from a vehicle driven by Mr. Walker struck a sixteen-month-old child as she slept on a couch in her family's living room, killing her. *See id.* at 1263–64.

In the federal court proceedings below, Mr. Walker asserted twelve grounds for habeas relief, all of which the district court denied. *See Walker v. Heimgartner*, No. 15-CV-3230-DDC, 2017 WL 1197645, at *1 (D. Kan. Mar. 31, 2017) (the "District Court Order"). The court deemed none of the twelve grounds presented as close questions. To the contrary, the district court opined that its rulings "are not the type that reasonable jurists could debate or would conclude were wrong." *Id.* at *13. As such, the district court declined to issue a COA. *Id.*

## II.   ANALYSIS

On appeal, Mr. Walker has trimmed his proposed grounds for relief from twelve to three: he now bases his petition on alleged violations of (1) due process arising from the trial court's decision denying Mr. Walker's motion to suppress statements and evidence discovered during a police investigation; (2) the Fourth Amendment because his arrest was not supported by probable cause; and (3) the Sixth Amendment due to ineffective

2

assistance of counsel.[2] But because the district court declined to issue a COA, we lack jurisdiction to consider the merits of any of these claims unless and until we issue a COA as to one or more of the claims Mr. Walker wishes to appeal. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

A habeas petitioner is entitled to a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As in the district court below, this standard requires Mr. Walker to demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Mr. Walker has not met that standard. To see why, we now turn to each of the three issues he seeks to appeal.

## A. *Due Process Violations*

Citing *Wong Sun v. United States*, 371 U.S. 471 (1963), Mr. Walker argues that certain unspecified "vehicle evidence" should have been suppressed as tainted. As to this first issue, Mr. Walker's handwritten pro se brief states, in its entirety:

> Their [sic] was no independent source and the lead Detective Randall Reynolds said It was from me that the police got the Information the lead [sic] to the car. and that came from the part of the statement that was suppressed by the Court.

---

[2] The first two issues correspond to the first and twelfth issues identified by the district court. *See Walker v. Heimgartner*, No. 15-CV-3230-DDC, 2017 WL 1197645, at *1 (D. Kan. Mar. 31, 2017) (the "District Court Order"). The third issue was raised for the first time in Mr. Walker's motion to alter or amend the district court's judgment under Fed. R. Civ. P. 59(e), which the district court denied. *See Walker v. Heimgartner*, No. 15-CV-3230-DDC, 2017 WL 2591526, at *1 (D. Kan. June 15, 2017).

. . . .

> The District Court was wrong when it said the Kansas Supreme Court was right when it denied my issue about the vehicle evidence and all evidence that came from the police interrogation. Fourth, Fifth, and Fourtee[n]th Amendment due process right. Under *Wong Sun v. United States*, all the evidence must be suppressed as fruit of the poison tree. Their [sic] was no independent source. The lead Detective said Good police work would have lead [sic] them to it. Yet they relied on evidence from the inadmissible portion. The lead Detective said without the name Scott that evidence would have been almost impossible to find and he said that on the stand.

Criminal defendants are indeed sometimes constitutionally entitled to the suppression of evidence deemed to be "fruit of the poisonous tree," i.e., evidence discovered as a result of unlawful police activity. *See Wong Sun*, 371 U.S. at 485; *United States v. Olivares-Rangel*, 458 F.3d 1104, 1108–09 (10th Cir. 2005). Relying on Mr. Walker's brief alone, it would be impossible for us to understand the factual underpinnings of his claim, much less find that he has made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), or "that the issues presented [a]re adequate to deserve encouragement to proceed further," *Slack*, 529 U.S. at 484 (internal quotation marks omitted).

Construing his filings liberally, however, we understand from prior court opinions that Mr. Walker's due process arguments under the Fifth and Fourteenth Amendments arise from the state trial court's decision denying his motion to suppress physical evidence that came to light in part because of statements made by Mr. Walker after he

4

was unconstitutionally deprived of his right to counsel.[3] *See* District Court Order, at *6–8; *Walker*, 153 P.3d at 1269–71. In affirming Mr. Walker's conviction on direct appeal, the Kansas Supreme Court described the circumstances surrounding the police's interrogation of Mr. Walker and the evidence gathered therefrom:

> The police interrogation of Walker occurred at the Wichita Police Investigations Bureau. Walker came to the bureau voluntarily after hearing that police wanted to speak with him. Walker was advised of his *Miranda* rights, and Walker indicated that he understood and wished to waive those rights and speak to the police. He initialed and signed a *Miranda* waiver form. Several hours into the interview, Walker made inculpatory statements, admitting to driving the car involved in the shooting.

> Sometime after making that statement, Walker said, "If I could talk to my grandma right now, I just need to talk to a lawyer, man—I can't wait till I go downstairs." In *Walker I*, this court held that the police were required to honor that request to speak to an attorney and should have stopped the interrogation. Their failure to cease questioning required the suppression of all statements subsequent to Walker's request for counsel.

> Upon retrial, the trial court followed the holding in *Walker I* by suppressing all statements made after Walker's request for counsel. However, Walker sought a broader order of suppression, arguing his statements were not voluntary but rather were elicited through coercive tactics. He also argued that because the detectives continued questioning him after he asserted his right to counsel, all evidence discovered as a direct result of the interrogation should have been excluded as "fruit of the poisonous tree."

> Based upon the trial court's ruling that the statement was voluntary, the State, over defense counsel's objection, introduced into evidence a single statement from Walker's police interrogation: his admission to being the driver of the vehicle involved in the shooting.

---

[3] Without explanation, Mr. Walker also cites the Fourth Amendment, but he waived any Fourth Amendment claim in his reply brief filed in the district court. *See* District Court Order, at *6 n.1

*Walker*, 153 P.3d at 1264–65 (citations omitted). On appeal to this court, Mr. Walker focuses on the admission of physical evidence pertaining to the vehicle he was driving during the shooting. He contends that evidence should have been suppressed because there "was no independent source." Rather, Mr. Walker says the vehicle was discovered only on account of statements he made after requesting counsel, the point at which his interrogation became unconstitutional.

The Kansas Supreme Court carefully considered Mr. Walker's suppression argument on direct appeal:

> Walker further contends that the trial court erred in denying his motion to suppress physical evidence discovered as the fruit of a *Miranda* violation. Walker specifically argues that evidence pertaining to the vehicle should have been suppressed because statements given by Walker in violation of his right to counsel led law enforcement officers to locate the evidence.
>
> The State argues the evidence should not be suppressed under the independent source test.
>
> The exclusionary rule that prohibits the use of wrongfully obtained confessions also prohibits the use of any evidence obtained as a result of the wrongfully obtained statements under the fruit of the poisonous tree doctrine. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S. Ct. 182, 64 L. Ed. 319 (1920) ("The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.") 251 U.S. at 392, 40 S. Ct. 182.
>
> The evidence may be used, however, if police can trace the evidence to an independent and lawful source. *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S. Ct. 407, 9 L. Ed.2d 441 (1963). . . .
>
> . . . .
>
> In this case, at the suppression hearing, the prosecutor acknowledged that after Walker requested counsel, he described the car that was used in

the crime and started telling officers about how he obtained the vehicle. Also, in the inadmissible portion of the interrogation, Walker provided law enforcement with the name "Scott" as the owner of the vehicle and the fact that the vehicle was maroon in color. But, officers' testimony revealed that Walker gave the wrong make of the car and the wrong location. The trial court ultimately found that the police used some information from the admissible portion of the interrogation, in conjunction with independent police investigation, to determine who owned the car, where it was located, and how Walker got the car on the night of the drive-by shooting.

Substantial competent evidence supports the trial court's conclusion that the prosecution established, by a preponderance of the evidence, that the unlawfully obtained evidence would have ultimately or inevitably been discovered by lawful means. Detective Reynolds testified that, during the admissible portion of the interview, Walker provided the police with the name of "Shawntell" Thomas as an alibi witness. Walker also mentioned that he and Thomas were in a car together on the night of the incident. Later, officers talked to Thomas who described the car as maroon in color.

Officers' testimony also revealed that Walker mentioned the names of Shaun Bell and Reginald Hunt during the admissible portion of the interview. Reynolds testified that, based on an address for a crack house provided by Walker during the inadmissible portion of the interview, the police went to Hunt's residence and talked to Hunt who admitted knowing Walker. It was a narcotics search warrant executed at Hunt's residence that led police to Scott Shaffer and his vehicle—the one that was used in the drive-by shooting. Regardless, Reynolds' testimony also indicated that, even if Walker had not given Hunt's address and the name "Scott" during the inadmissible portion of the interrogation, officers would have gone to the house to interview Hunt because Walker and Lowe had been there on the night of the drive-by shooting incident. Walker mentioned he had been at Hunt's house before he requested counsel.

The record shows that, while officers used evidence from both the admissible and inadmissible portions of Walker's interrogation to investigate further into the details of the case, none of the statements made by Walker in the inadmissible portion of the interrogation led officers directly to the car used in the incident. The car was located only after law enforcement followed other leads, conducted interviews of other witnesses, and assimilated independent information.

The trial court correctly denied Walker's motion to suppress the vehicle evidence.

7

*Id.* at 1269–71.

On federal habeas review, the district court held that the above-quoted analysis "is consistent with federal constitutional law" and "constitutes a reasonable determination of the facts considering the evidence presented." District Court Order, at *8. Against this backdrop, Mr. Walker's naked protestation that there "was no independent source" falls far short of the "substantial showing of the denial of a constitutional right" that is required for us to grant a COA. *See* 28 U.S.C. § 2253(c)(2).[4]

## B. *Fourth Amendment Violation*

Mr. Walker next argues that he was arrested without probable cause, in violation of his rights under the Fourth Amendment. As a result, Mr. Walker suggests that all evidence obtained through exploitation of his illegal seizure should have been suppressed. As the district court correctly noted, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." District Court Order, at *12 (quoting *Stone v. Powell*, 428 U.S. 465, 494 (1976)). The district court evaluated the state-court proceedings in detail and determined that Mr. Walker was given an opportunity for full and fair litigation of his Fourth Amendment claim in state court:

---

[4] Mr. Walker also claims that Detective Reynolds testified at trial that "without the name Scott that evidence would have been almost impossible to find." But Mr. Walker cites nothing in the record substantiating that claim, and our own review of the record turned up no such testimony. We also note that Mr. Walker's account seems to be internally inconsistent, as he also asserts that Detective Reynolds "said Good police work would have lead [sic] them to" the vehicle, anyway.

> [T]he record shows that petitioner had a full and fair opportunity to litigate this Fourth Amendment claim. Petitioner presented the issue to the trial court in his Kan. Stat. Ann. § 60-1507 motion. Petitioner's counsel fully briefed the issue and argued the matter at a hearing before the district court on October 5, 2012. At the conclusion of the hearing, the district court found that probable cause existed to arrest petitioner, and it denied the requested relief. Petitioner then had the opportunity to appeal the issue directly to the Kansas Court of Appeals with the assistance of newly appointed counsel. Petitioner's counsel fully briefed the issue for the appellate court's consideration. The Kansas Court of Appeals sufficiently considered the issue and denied petitioner's claim for relief. *See Walker*, 2014 WL 3843084, at *6–8. In its opinion, the Kansas Court of Appeals reasonably applied the correct and controlling constitutional standard. *See id.* (citing *Illinois v. Gates*, 462 U.S. 213, 234–35 (1983); *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979) (further citations omitted)). Under these facts, the State provided petitioner a full and fair opportunity to litigate his Fourth Amendment claim.

*Id.* The district court thus concluded that it could not grant federal habeas relief for any Fourth Amendment violation based on Mr. Walker's probable cause argument. *Id.* And it further held that, even were his Fourth Amendment claim not barred by *Stone*, Mr. Walker failed to show that the Kansas Court of Appeals' decision was based on an unreasonable application of Supreme Court precedent or involved an unreasonable determination of the facts. *Id.* at *13.

On appeal, Mr. Walker offers no argument as to why the Kansas proceedings were deficient, instead baldly claiming that the Kansas courts "did not hold a hearing" at all, without providing any hint as to why the district court's reading of the state court record was in error. He further presents various arguments as to why the state courts' merits decisions were wrong under federal law. "But the ultimate accuracy of a state court's legal analysis is not relevant to the inquiry required by *Stone* unless 'the state court

9

willfully refuse[d] to apply the correct and controlling standards." *Fuller v. Warden, Ark. Valley Corr. Facility*, 698 F. App'x 929, 941 (10th Cir. 2017) (alteration in original) (quoting *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978)). That plainly was not the case here, *see supra*, and we therefore conclude that reasonable jurists could not debate the district court's determination that Mr. Walker is not entitled to federal habeas relief on his Fourth Amendment claim because the state courts provided him a full and fair opportunity to litigate that claim.

## C. *Ineffective Assistance of Counsel*

Finally, Mr. Walker argues that his lawyer was "ineffective for not filing a petition for review" with the Kansas Supreme Court. To be sure, Mr. Walker's counsel filed multiple petitions for review with the Kansas Supreme Court, on both direct review, *see State v. Walker*, 80 P.3d 1132 (Kan. 2003) (reversing and remanding for a new trial); *see also Walker*, 153 P.3d 1257 (affirming Mr. Walker's convictions and sentences on retrial), and state habeas review, *see* District Court Order, at *4 (noting that the Kansas Supreme Court granted Mr. Walker's petition for review of the Kansas Court of Appeals' 2010 habeas decision, which it summarily reversed); *id.* (noting that Mr. Walker filed an unsuccessful petition for review of the Kansas Court of Appeals' 2014 habeas decision). Mr. Walker's contention is that his counsel was ineffective for not petitioning the Kansas Supreme Court for review of the Kansas Court of Appeals' 2012 habeas decision, *see Walker v. State*, 270 P. 3d 1229, 2012 WL 686685, at *5–6 (Kan. Ct. App. Feb. 17, 2012) ("*Walker II*") (unpublished table opinion), which decision found that various issues were procedurally barred but nonetheless remanded to the district court to determine whether

10

other issues not procedurally barred had merit. The district court held that Mr. Walker's failure to petition for review of *Walker II*'s holding that certain claims were procedurally barred amounted to a failure to ever present those claims to the highest state court in Kansas, which in turn means those claims are barred in federal court by the doctrines of exhaustion and procedural default. *See* District Court Order, at \*5. But Mr. Walker does not argue the district court's holding that these claims were barred is incorrect; instead, he faults his attorney for ineffective assistance of counsel, an argument made for the first time on reconsideration.

Even if we were to assume (which we do not) that Mr. Walker's counsel was ineffective in failing to petition for review of *Walker II*, this sort of ineffective-assistance claim is not cognizable under federal habeas law. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). It is thus not a matter that reasonable jurists could debate and we again decline to issue a COA on this final ground for review.

### III.    CONCLUSION

The request for a COA is denied and this appeal is dismissed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

11